**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION | MDL No. 2842<br>Case No. 18 C 4171<br><br>Hon. Manish S. Shah |

**JOINT MEMORANDUM OF PLAINTIFFS AMY HUANG AND ALEX PALATIELLO CONCERNING THE APPOINTMENT OF PLAINTIFFS' COUNSEL, SCHEDULING, AND INITIATING DISCOVERY TO IDENTIFY DOE DEFENDANTS**

**LABATON SUCHAROW LLP**
Gregory S. Asciolla (admitted *pro hac vice*)
Christopher J. McDonald (admitted *pro hac vice*)
Matthew J. Perez (admitted *pro hac vice*)
Brian Morrison (admitted *pro hac vice*)
140 Broadway
New York, New York  10005
Tel: (212)-907-0700
gasciolla@labaton.com
cmcdonald@labaton.com
mperez@labaton.com
bmorrison@labaton.com

*Counsel for Plaintiff Amy Huang*

**DICELLO LEVITT & CASEY LLC**
Adam J. Levitt
John E. Tangren
Adam Prom
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois  60602
Tel: (312)-214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
aprom@dlcfirm.com

*Counsel for Plaintiff Alex Palatiello*

**Dated:** July 9, 2018

Plaintiffs Amy Huang and Alex Palatiello ("Plaintiffs"), by their undersigned counsel, respectfully submit this joint memorandum to address issues the Court raised concerning class leadership, scheduling, and discovery. *See* Doc. Nos. 4, 10. Plaintiffs' positions are as follows.

*First*, concerning "plaintiff Bueno's motion for appointment as lead plaintiff and counsel" (Doc. No. 4), Plaintiffs do not take issue with Bueno's motion insofar as it is limited solely to organizing the prosecution of the novel claims brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"). That said, the prosecution of *non*-PSLRA claims should be litigated by counsel *other than* PSLRA "lead counsel." Instead, the Court should appoint separate "interim class counsel" pursuant to Federal Rule of Civil Procedure 23(g) to prosecute non-PSLRA claims, including those brought pursuant to the Commodity Exchange Act ("CEA"), the Sherman Act, and the common law. Our proposal for the process to organize plaintiffs and their counsel is discussed below in **Section I**.

*Second*, concerning "deadlines for served defendants to respond to (one or more) complaints" (*id.*), Plaintiffs respectfully suggest that any such deadlines be adjourned *sine die*. The Court should first establish this litigation's structure and appoint plaintiffs' counsel to leadership positions within that structure to represent the different plaintiff subgroups. Court-appointed counsel would then draft the operative consolidated pleadings to which Defendants would be required to respond. Our proposed schedule is discussed below in **Section II**.

*Third*, concerning "discovery to identify Doe defendants" (*id.*), Plaintiffs believe the pursuit of such discovery should be left to the firms appointed by the Court to lead the MDL, who should proceed expeditiously once appointed. This is also addressed below in **Section II**.

I.      **Organizing all plaintiffs' claims will determine how to best organize their counsel.**

This litigation centers on the VIX, a widely-tracked financial volatility index created and calculated by the Chicago Board Options Exchange ("CBOE"), measuring the 30-day implied

volatility of the stock market. While the VIX is not a security itself, financial products such as VIX futures contracts and options are directly linked to the index. A critical input to the formula for the VIX is pricing data for S&P 500 index options ("SPX options"). A key allegation in this MDL is that certain SPX options traders triggered deviations in the VIX by causing artificial movements in SPX options.[1]

Manipulating the VIX this way allegedly injured investors in VIX futures, VIX options, a variety of volatility-related exchange-traded notes and funds ("ETNs/ETFs"), and/or SPX options. These different financial products give rise to different claims. For instance, SPX options are subject to the Securities Exchange Act and Securities and Exchange Commission regulations, *see* 15 U.S.C.§§ 78a *et seq*.; investors may choose to assert securities and/or antitrust claims, but not CEA claims. VIX futures, as exchange traded futures contracts, are subject to the CEA and Commodity Futures Trading Commission regulations, *see* 7 U.S.C. §§1, *et seq*.; investors may choose to assert CEA and/or antitrust claims, but not securities claims.

In organizing a multidistrict litigation, "there is a fine line in an MDL between establishing (a) an organizational structure that promotes the efficient delegation of work, and (b) an elaborate inter-firm bureaucracy that impedes progress and generates fees." *In re Navistar MaxxForce Engines Mktg., Sales Practices & Prods. Liab. Litig.*, No. 14-CV-10318, 2015 WL 1216318, at *2 (N.D. Ill. Mar. 5, 2015) (Gottschall, J.). The "most important" factor is "achieving efficiency and economy without jeopardizing fairness to the parties." *Manual for Complex Litigation (Fourth)* § 10.221. Fairness in this context requires independent counsel to protect different groups of plaintiffs bringing different types of claims. Maintaining separate

---

[1] Most actions name manipulating traders as "Doe" defendants; three actions name specific entities, primarily SPX option market makers, as defendants. More than half the actions name CBOE and related entities as defendants, generally alleging they were woefully derelict in their responsibilities by allowing (and substantially profiting from) the rampant, long-term manipulation of the VIX. *See* Exhibit A.

putative classes from the outset of litigation is warranted when the "classes may be differently positioned at various stages of the litigation, creating a potential conflict in their joint representation." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2011 WL 5007957, at *2 (S.D.N.Y. Oct. 18, 2011); *see also Deangelis v. Corzine*, 286 F.R.D. 220, 222, 224 (S.D.N.Y. 2012) (appointing interim class counsel for "federal commodities laws" claims after appointing lead counsel for "claims asserted . . . under federal securities laws").

PSLRA plaintiffs (Bueno and Burnell) are differently positioned from non-PSLRA plaintiffs (those in all 20 other actions) in important ways. Critically, non-PSLRA plaintiffs need not prove scienter or meet the heightened pleading standards applicable to securities fraud claims. *See, e.g.*, 15 U.S.C. § 78u-4(b)(1)-(2) (requiring heightened pleading for scienter and other allegations). Unitary representation of PSLRA and non-PSLRA plaintiffs alike would necessarily require attorney time, expert work, and pages of briefing to support the merits of securities fraud claims, shifting resources away from the non-PSLRA claims that all of the other plaintiffs chose to bring.[2]

PSLRA and non-PSLRA claims differ in other ways as well. PSLRA claims are subject to a mandatory discovery stay (15 U.S.C. § 78u–4(b)(3)(B)). Appointment of a PSLRA "lead plaintiff" is based in part on which applicant has the "largest financial interest" (15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)), whereas interim lead counsel in non-PSLRA cases select from among the plaintiffs the most qualified class representatives. Under the PSLRA, lead plaintiff selects and retains counsel (15 U.S.C. § 78u–4(a)(3)(B)(v)), whereas appointment of interim

---

[2] "Unitary representation of separate classes that claim distinct, competing, and conflicting relief create unacceptable incentives for counsel to trade benefits to one class for benefits to the other in order somehow to reach a settlement." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 234 (2d Cir. 2016) (finding "clear" conflict where plaintiff subgroups sought different relief); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011) ("Only the creation of [separate] classes, and the advocacy of an attorney representing each []class, can ensure that the interests of that particular subgroup are in fact adequately represented.").

class counsel under Fed. R. Civ. P. 23(g) requires courts to consider, among other things, the role of counsel in developing the case and the experience and expertise of counsel. There may also be relevant differences in available attorneys' fees. *See, e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (noting that the "fee restrictions described in the PSLRA do not apply in any context other than securities actions, and, even if they did, it is not clear how they would apply").[3]

Given the overlap among plaintiffs and potential claims, organizing the MDL based strictly by type of claim or product purchased would be inefficient; it could potentially require four or more sets of lawyers (*e.g.*, for securities, CEA, antitrust, and common law claims). Accordingly, Plaintiffs propose a simpler, hybrid approach, whereby PSLRA claims would be consolidated into a single complaint and prosecuted by PSLRA "lead counsel," and non-PSLRA claims (CEA, antitrust, and common law) would likewise be consolidated in a separate complaint and litigated by interim class counsel appointed pursuant to Fed. R. Civ. P. 23(g).[4]

The consolidated actions would be coordinated. This comports with 28 U.S.C. § 1407. Coordination between lead counsel for the PSLRA claims and interim class counsel for non-PSLRA claims with respect to scheduling, discovery, and other common issues should be sufficient to achieve efficiency and economy, without a bloated bureaucracy of counsel.

Plaintiffs also respectfully suggest that at the conclusion of the July 11 conference, the Court should provide guidance on what leadership structure it prefers (concerning, *e.g.*, whether the Court prefers a co-lead or steering committee structure, whether the Court believes liaison

---

[3] There is also a tail-wagging-the-dog quality to the notion that PSLRA "lead counsel" might secure leadership for the MDL as a whole by bringing securities fraud claims that virtually all other counsel affirmatively elected not to pursue.

[4] CEA and Sherman Act claims are regularly included in the same consolidated pleading. *See, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 212908 (N.D. Ill. Jan. 18, 2013); *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017).

counsel is necessary, whether one or more committees serving at interim class counsel's direction is advisable), so leadership applications can be tailored accordingly. While Plaintiffs anticipate that other plaintiffs' submissions may propose a two-step process, with a separate round of briefing on the structural issue as a precursor to actually applying for leadership positions, Plaintiffs here respectfully submit that no such additional briefing is needed. By the end of the July 11 hearing, the Court will have had the benefit of multiple written submissions and the in-person input of plaintiffs' counsel. Additional briefing will only lengthen this process and needlessly defer the affirmative prosecution of these actions.

For our part, Plaintiffs suggest a small co-lead interim class counsel structure to lead the case, which can be potentially expanded by adding a small committee of firms depending on the needs of the case (e.g., if discovery revealed a large number of "Doe" defendants).

## II. The Court should set a schedule to address leadership and "Doe" discovery, and subsequently set due dates for consolidated complaints and motions to dismiss.

Plaintiffs propose that the Court set a due date of July 20, 2018 for interim class counsel applications (15-page maximum). Within 14 days of leadership appointments, interim class counsel and lead counsel should jointly (i) circulate to all parties drafts of a protective order and ESI protocol, and (ii) serve CBOE with requests for production focused on discovering Doe defendants. Written responses and objections or any application for a protective order should occur on an expedited basis. A proposed order is included as Exhibit B and is being submitted to Proposed_Order_Shah@ilnd.uscourts.gov. Plaintiffs further suggest that the Court schedule dates for consolidated complaints and motions to dismiss after "Doe" discovery issues are resolved, to give plaintiffs' class counsel sufficient time to incorporate any discovery obtained into consolidated pleadings.

Dated: July 9, 2018 Respectfully submitted,

**DICELLO LEVITT & CASEY LLC**

By: */s/ Adam J. Levitt*
Adam J. Levitt
John E. Tangren
Adam Prom
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel: (312)-214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
aprom@dlcfirm.com

*Counsel for Plaintiff Alex Palatiello*

**LABATON SUCHAROW LLP**

By: */s/ Gregory S. Asciolla*
Gregory S. Asciolla (admitted *pro hac vice*)
Christopher J. McDonald (admitted *pro hac vice*)
Matthew J. Perez (admitted *pro hac vice*)
Brian Morrison (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Tel: (212)-907-0700
gasciolla@labaton.com
cmcdonald@labaton.com
mperez@labaton.com
bmorrison@labaton.com

**ZILIAK LAW, LLC**
Zachary J. Ziliak
141 West Jackson Boulevard, Suite 4048
Chicago, Illinois 60604
Tel: (312) 462-3350
zachary@ziliak.com

*Counsel for Plaintiff Amy Huang*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2018, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Adam J. Levitt*
Adam J. Levitt