# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION | Case No. 18 C 4171<br>MDL No. 2842<br><br>Hon. Manish S. Shah<br><br>This Document Relates to All Cases |

## RESPONSE IN FURTHER SUPPORT OF JOINT APPLICATION
## TO APPOINT LABATON SUCHAROW LLP AND
## DICELLO LEVITT & CASEY LLC AS INTERIM CLASS COUNSEL

**LABATON SUCHAROW LLP**
Gregory S. Asciolla (admitted *pro hac vice*)
Christopher J. McDonald (admitted *pro hac vice*)
Karin E. Garvey (*pro hac vice* pending)
Matthew J. Perez (admitted *pro hac vice*)
Jonathan Crevier (*pro hac vice* pending)
140 Broadway
New York, New York  10005
Tel: (212) 907-0700
gasciolla@labaton.com
cmcdonald@labaton.com
kgarvey@labaton.com
mperez@labaton.com
jcrevier@labaton.com

*Counsel for Plaintiff Amy Huang*

**DICELLO LEVITT & CASEY LLC**
Adam J. Levitt
John E. Tangren
Amy E. Keller
Adam Prom
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois  60602
Tel: (312) 214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
akeller@dlcfirm.com
aprom@dlcfirm.com

*Counsel for Plaintiff Alex Palatiello*

**Dated:** August 1, 2018

Plaintiffs Amy Huang and Alex Palatiello ("Moving Plaintiffs") respectfully submit this response in further support of appointing Labaton Sucharow LLP ("Labaton Sucharow") and DiCello Levitt & Casey LLC ("DLC") as Interim Class Counsel. This response specifically addresses three points: (1) why Moving Plaintiffs' proposal for coordinating the theories and claims herein, of the only two proposals offered, best serves the needs of this litigation; (2) why Moving Plaintiffs' proposed organizational structure best serves the needs of the class(es) proposed in this litigation; and (3) why Labaton Sucharow and DLC best satisfy the relevant criteria for appointment as Interim Class Counsel in this litigation.

## ARGUMENT

### I. Moving Plaintiffs' Proposal to Coordinate Theories and Claims Is the Right One.

What is striking about many of the leadership applications filed in this litigation is that they fail to address the Court's request for a "proposal for coordinating the theories and the claims." Transcript of July 11, 2018 Proceedings ("Tr.") at 13:25. To that end, we proposed a process under which Court-appointed leadership would interview plaintiffs, their counsel, and their consultants to consider the potential theories and claims against the various potential defendants and integrate the best into a consolidated master pleading (*see* ECF No. 73 at 7–8). Surprisingly, only one other leadership application proposed any coordination approach at all.[1]

We maintain that, in this litigation, the best approach would be to allow plaintiffs' Court-appointed leadership to determine which defendants should be named in the initial master complaint with the benefit of full vetting and consideration. We would, for example, seek to learn more about information gleaned from witnesses, and to explore whether there is additional

---

[1] Robbins Geller/Quinn Emanuel suggested a bifurcated approach, wherein the "first phase" of the litigation would focus solely on claims against CBOE (*see* ECF No. 74 at 13–14). We believe that to preordain that result, or any other one, prior to engaging in a comprehensive due diligence process would not be the best approach and could create more problems than it could ever solve.

information available to plaintiffs' counsel, but not included in pleadings filed to date, that may affect our analysis of which claims to pursue and against which defendants to pursue them.[2] If appointed, we would also talk with all counsel who named "market maker" defendants, in order to assess the risks and benefits of pursuing those claims from the outset. Only then would we determine the optimal pleading approach here.

Thus, having considered the only other suggestion for moving the case forward, we continue to believe that our approach to integrating theories and claims is the correct approach for this litigation.

## II.     Other Proposed Leadership Structures Will Not Best Serve the Needs of This Litigation.

To meet the Court's stated goal of pursuing all claims in "a single master consolidated complaint" (Tr. at 12:22–23) while also protecting investors with potentially divergent interests, we proposed that three firms "co-lead" this MDL as Interim Class Counsel, supported by a Plaintiffs' Steering Committee ("PSC") whose membership represented plaintiffs from different investor subgroups. The three subgroups whose interests could and should be protected through our suggested PSC appointments are: (1) investors in VIX futures and/or VIX options; (2) investors in SPX options; and (3) investors in ETNs/ETFs. *See* ECF No. 73 at 4. Other proposals, as discussed below in turn, either inadequately protect plaintiff subgroups or do not protect their interests at all.

---

[2] The leadership applications submitted by Hagens Berman, Hausfeld, Kessler Topaz, Robbins Geller/Quinn Emanuel, and Scott & Scott each assert that their pre-complaint investigations included speaking with witnesses ("confidential" witnesses in the case of Hagens Berman, which also claims to have undertaken "a systematic investigation of non-public sources of information"). *See* ECF Nos. 72 at 10; 89 at 5; 91 at 10; 74 at 3; 83 at 3–4, 8. It is not immediately obvious to us how the complaints on file benefited from such witness-sourced, non-public information. As Interim Class Counsel, we would seek to learn more about the investigations and the information these witnesses provided to assess the factual support for any claims we would assert in a master consolidated complaint.

For example, the Robbins Geller/Quinn Emanuel application (ECF No. 74) does not account at all for the potentially divergent interests of plaintiff subgroups and, therefore, offers no protections for those groups. Their lone client and presumed "lead plaintiff" Bueno transacted in *each* of the three subgroups, which excludes him from a position to safeguard the interests of *any* of the subgroups.[3] Correspondingly, their request to lead this entire litigation without any structural protections in place virtually ensures the untenable situation in which no independent counsel advocates for the best interests of any one subgroup, and should thus be rejected.

The Scott & Scott/Kessler Topaz proposal (ECF Nos. 83 & 91) fares no better. That proposal assigns PSC positions to firms ostensibly, and at least in part, based on the products their clients purchased. But the Scott & Scott/Kessler Topaz proposal fails to explain why investors in VIX futures and investors in VIX options require separate PSC slots, and further fails to explain why SPX option investors and ETN/ETF investors *do not* require separate PSC slots. *See* ECF No. 83 at 2, 6, 14.[4] The Cohen Milstein/Cafferty Clobes ("C+C") proposal groups the products differently—VIX futures and ETNs/ETFs have separate PSC representation; SPX options and VIX options are lumped together—but they likewise fail to coherently justify the split. *See* ECF No. 63 at 1–2, 5–6.[5] In contrast, our proposal explained why one PSC member

---

[3] *See* Compl. ¶¶ 16, 50, *Bueno v. CBOE*, No. 18-2435, ECF No. 1 (N.D. Ill. Apr. 5, 2018) (alleging transactions in SPX options, VIX options, and ETNs/ETFs).

[4] Their proposal appears to assume that the "PSLRA" PSC member should be responsible for SPX options and ETNs/ETFs, *and* that investors in these products may only assert claims under the federal securities laws. That neat division, however, incorrectly ignores the fact that products and potential claims overlap. For us, the point of assigning different PSC members responsibility for different subgroups is *not* for each PSC member to bring claims solely on behalf of its subgroup; rather, it is to ensure that in the event the interests of plaintiff subgroups diverge—with respect to *any* issue or claim—there is a PSC member tasked with advocating on behalf of each subgroup's interests.

[5] It is no answer to say that VIX futures investors must be isolated because they may have potential Commodity Exchange Act claims, while other subgroups may not; their antitrust (or common law) claims overlap with those of other plaintiff subgroups. Likewise, a VIX option investor with a securities fraud claim has the same goal as a VIX futures investor in their common pursuit of antitrust claims. More

could adequately represent the interests of VIX futures and VIX options investors, which is regularly done in other cases involving futures and options products (*see* ECF No. 73 at 4–5 & n. 5), and reserved separate slots on the PSC for counsel representing SPX options investors and counsel representing ETN/ETF investors (*see id*. at 3–7).

Finally, both the C+C and the Hagens Berman applications propose that leadership of this litigation, as a whole, should be split between PSLRA and non-PSLRA claims. *See* ECF Nos. 63 at 1; 72 at 2. That proposal, however, flies in the face of the Court's request at the July 11 conference that plaintiffs' counsel "wrangle" the various plaintiffs, theories, and claims "into a single master consolidated complaint." Tr. at 12:21–23. A single complaint requires leadership responsible for all claims. Our proposed structure assigns primary responsibility for the securities fraud claims to a would-be PSLRA "lead counsel" firm at the PSC level. But Interim Class Counsel must have ultimate responsibility for ensuring that all claims are harmonized into a single, coherent pleading. For that reason, at least one of the firms appointed as Interim Class Counsel should have significant knowledge about and experience prosecuting securities fraud claims.

## III. The Court Should Give Appropriate Weight to the Various Claims of the Leadership Applicants.

We recognize that class action leadership applications are often an exercise in self-promotion, and, of course, we seek to promote our own firms and the diversity and credentials of the attorneys therein.[6] That said, not every selling point that a firm may trumpet deserves equal weight. This case is no exception.

---

critical for purposes of determining logical groupings is the fact that VIX futures and options are both based on the CBOE Volatility Index, *i.e.*, the VIX, whereas SPX options are based on the S&P 500 Index.

[6] This application process has been somewhat different in that we have dedicated a significant amount of our limited space to addressing structural and other considerations. Indeed, last week's opening brief may

First, the Court should be wary of applications that emphasize being the "first" to do anything in the context of this litigation. For example, C+C claims to have brought "the first action to assert market manipulation claims under the CEA" (ECF No. 63 at 3); Scott & Scott claims to be the first to name various CBOE defendants (ECF No. 83 at 1–2); Hausfeld claims to be "the first firm to identify a number of non-'John Doe' defendants other than the CBOE" (ECF No. 89 at 5); Robbins Geller/Quinn Emanuel promotes the fact that they were the first to file securities fraud claims (ECF No. 74 at 7), *etc*. This is mere puffery and should be disregarded as such. The indisputable fact is that this litigation is not a "proprietary" case conceived by one firm, with all others riding its coattails. Indeed, every complaint filed to date cites to the same academic article,[7] and nearly every complaint cites to the same "whistleblower" letter.[8] Every complaint was filed after the unprecedented movement of the VIX on February 5, 2018.

More specifically, under the circumstances of this case, being first *simply for the sake of being first* is not something to be encouraged, let alone rewarded. The complaints filed on behalf of the Moving Plaintiffs each named one or more CBOE entities as defendants. So did the *Bueno* complaint filed by Robbins Geller/Quinn Emanuel, the *Terwilliger* complaint filed by Hagens Berman, both complaints filed by Scott & Scott/Korein Tillery (*Tomasulo* and *Breakwater Trading*), and the complaints filed by Kellogg Hansen (*Pels*) and Hausfeld (*Siegel*). Given the core allegations—that CBOE entities were woefully derelict in their responsibilities by allowing (and substantially profiting from) rampant, long-term VIX manipulation—this is entirely unsurprising. Significantly, however, of the firms vying for leadership, two failed to name these

---

be the first time in which the discussion of cases led or co-led by Labaton Sucharow and DLC resulting in billions of dollars in recoveries was relegated primarily to a few footnotes and exhibits.

[7] John M. Griffin & Amin Shams, *Manipulation in the VIX?* at 37 (May 23, 2017), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2972979.

[8] Letter from Jason Zuckerman to James McDonald dated February 12, 2018.

essential defendants in complaints they filed: Kessler Topaz, which "filed the first complaint in this MDL" (ECF No. 83 at 1), and the C+C firms, which "filed the first action in this District" (ECF No. 63 at 2). There is no question that there are times when being the "first" firm to do something that brings real value to the class should be a leadership consideration. For the foregoing reasons, however, this is not one of those times.

Likewise, the Scott & Scott/Kessler Topaz group's designation of itself as the "consensus" group should raise a red flag for the Court. The so-called "consensus" proposal suggests Kessler Topaz and Scott & Scott as co-leads, Korein Tillery as liaison counsel, Kellogg Hansen and Hausfeld as two members of a three-firm PSC, with the final PSC position reserved for "a PSLRA counsel." ECF No. 83 at 1–2. The large number of firms (and groups) seeking leadership confirms that, in fact, there is no consensus among plaintiffs' counsel here.

Moreover, our proposal provides this Court with the freedom to carry out its mission under Fed. R. Civ. P. 23(g)(2) to appoint the applicants "best able to represent the interests of the class." For instance, our proposal demonstrates that one firm of the Court's choosing can protect the interests of VIX futures and VIX options investors. By contrast, the so-called "consensus" proposal creates—and fills—two separate PSC slots for VIX futures counsel and VIX options counsel, without adequately explaining the need for having separate firms. Our proposal is also leaner in that it requires no liaison counsel; DLC, a Chicago-based firm, is capable of fulfilling that role if appointed Interim Class Counsel. Scott & Scott and Kessler Topaz propose an additional firm, Korein Tillery, as liaison counsel.[9]

---

[9] Korein Tillery's signature block on its supporting brief (Dkt. No. 83 at 15) lists *ten* lawyers from its two offices—almost 40% of all of the lawyers in that firm—a staffing level that seems excessive given that liaison counsel is typically "[c]harged with essentially administrative matters." *Manual for Complex Litigation* (*Fourth*) § 10.221.

The Scott & Scott/Kessler Topaz proposal is supported by a number of other firms, including several that clearly hope to get work in the case.[10] We recognize that several firms supporting the so-called "consensus" proposal emphasize that no "promises" were made to them concerning future work on the case in exchange for their support. *See, e.g.*, ECF Nos. 69 at 3 n.2; 88 at 1 n.1; 89 at 14–15. While we have no reason to doubt the sincerity of those representations, the fact remains that even if such promises did not occur, there is often the hope, if not the expectation, that court-appointed leadership counsel would do what it can to direct and drive work to those supporting firms. We speak from experience. Both Labaton Sucharow and DLC have applied for leadership positions in other cases with the support of other firms, and, on certain occasions, have "stepped back" in order to support other people's leadership applications with the hope that the appointed leadership would provide opportunities for us to work on a case. Here, our proposal is unencumbered by formal or informal obligations or expectations *of any kind* to direct work in this case (or any other case) to any other firm representing plaintiffs in this litigation. Should the need arise to assign tasks to other plaintiffs' counsel, we will be guided solely by what is best for the case.

Having discussed those claims of leadership applicants that should not be entitled to significant weight, we now turn to various factors that we respectfully submit the Court should focus on in its Rule 23(g) analysis here. For instance, other applicants have suggested that factors that should be considered include: working with subject matter experts; communicating with the

---

[10] *See, e.g.*, ECF No. 70 at 1 n.1 (Kaplan Fox supporting application but contingently applying for leadership if the application is not adopted in full); ECF No. 80 at 2 (Berger Montague supporting application, but also seeking PSC membership "[i]f the Court is inclined to appoint any additional firms to the [PSC]"); ECF No. 69 at 1 n.1 (Wolf Haldenstein supporting application, but would "work as a member of the executive committee that the Court may create"); ECF No. 88 at 1 (Stull Stull & Brody supporting application, but asking to be appointed to PSC "if the Court believes that a larger steering committee would best serve the putative classes"); ECF No. 81 at 1–2 (Gustafson Gluek and Wexler Wallace supporting application but proposing a five to eight firm PSC that includes each of their firms).

attorney who authored the February 2018 "whistleblower" letter; and working collegially with the Court and other counsel. We agree and submit that, under those criteria, Labaton Sucharow and DLC merit their requested leadership appointments here.

**_Expert Work_:** At the heart of the alleged manipulation in this litigation is, essentially, an auction. The procedures for calculating the final settlement values for VIX futures and options is determined using the auction-clearing prices of SPX options in an auction called the Special Opening Quotation.[11] Although Labaton Sucharow's own internal investigation began months earlier (Declaration of Gregory S. Asciolla ("Asciolla Decl.") ¶ 4 (attached as Exhibit A)), Labaton Sucharow engaged Auctionomics in February 2018 to assist in analyzing the VIX-related market manipulation allegations (*id.* at ¶ 5). Auctionomics is one of the world's preeminent expert firms on auction design and bidder consulting services in high-stakes auctions. Among the clients that the firm has advised are the U.S. Justice Department and the Federal Communications Commission, government agencies in Canada and Mexico, and corporations such as Google, Microsoft, and Comcast. Auctionomics team members have also advised the U.S. Department of the Treasury.[12]

Auctionomics' co-founder and Board Chairman, Paul Milgrom, is Stanford University's Shirley R. and Leonard W. Ely Jr. Professor of Humanities and Sciences. Auctionomics' other co-founder and CEO, Dr. Silvia Console Battilana, has consulted on major auctions in the United States, Canada, Australia, Europe, Africa, and Latin America. The firm includes as members of its Board of Advisors Professors Alvin Roth and Roger Myerson, both Nobel Prize Laureates in Economics, and Reed Hundt, former FCC Chair. Jonathan Levin, Dean of Stanford's Graduate School of Business, is a consultant to the firm.

---

[11] *See* Compl. ¶¶ 47–51, *Huang v. CBOE*, No. 18-cv-2460 (N.D. Ill. Apr. 5, 2018), ECF No. 1.

[12] *See* Auctionomics, "Our Clients," http://www.auctionomics.com/clients-2 (last visited July 31, 2018).

As we alluded to in our opening papers, Labaton Sucharow's co-counsel Zachary Ziliak is a subject matter expert as well. Mr. Ziliak, managing partner of Ziliak Law, used to develop models for forecasting volatility as a quantitative analyst at UBS, a leading global investment bank. As an attorney, he has advised fund managers on internal controls, compliance, and risk management, designed and implemented automated option-trading systems, done damage calculations in options trading matters, has been a testifying expert in cases of market manipulation involving electronic trading of futures, and has been a consulting expert in cases related to algorithmic trading.

Similarly, beginning in early February 2018, DLC began working with a confidential consultant who formerly ran the VIX trading operation for a large, New York-based investment bank. Through its work with that consultant, DLC obtained a clear and detailed understanding and outlook on the facts and theories underpinning this case, as well as the creation of the VIX and the methods and environment that rendered VIX particularly susceptible to manipulation in the manner that occurred and has been alleged in every complaint comprising this MDL litigation.

**_The "Whistleblower Letter"_:** The letter from "whistleblower" counsel Jason Zuckerman to CFTC and SEC enforcement officials is dated February 12, 2018. On February 13, the head of Labaton Sucharow's SEC whistleblower practice, Jordan Thomas, who knows Mr. Zuckerman, reached out to him to facilitate a call with attorneys in the firm's antitrust practice group. Asciolla Decl. ¶ 6. On February 14, Labaton Sucharow attorneys communicated by email and conducted the first of several telephone interviews with Mr. Zuckerman. *Id.* at ¶ 7. Unfortunately, Mr. Zuckerman's client declined our invitation to be interviewed, even on an anonymous basis. *Id.*

___**Collegiality**___: Labaton Sucharow and DLC were co-lead counsel in *In re Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2284, before the Honorable Gene E.K. Pratter in the United States District Court for the Eastern District of Pennsylvania.[13] Although each firm could point to other examples of their professionalism— including their respective formation and successful leadership of multi-firm teams across more than 25 MDL litigations and a host of other large-scale, nationwide, class action cases—a July 23, 2018 letter from Judge Pratter is both apt and timely. In congratulating the parties' leadership for successfully concluding the *Imprelis* MDL, Judge Pratter said:

> I trust you will give yourselves and each other well deserved pats on the back for the high level of professional skills, acumen and collegial relationships displayed throughout this litigation. It was a pleasure to be the presiding judge, and I look forward to future opportunities to work with you.

Letter to All Counsel of Record from Gene E.K. Pratter, USDJ, dated July 23, 2018, attached as Exhibit B. Judge Pratter's letter in *Imprelis* is welcome validation of the collaborative spirit, energy, and focus that Labaton Sucharow and DLC bring to all of their cases. Both firms have the knowledge, skill, experience, and resources this MDL requires. Should they be appointed to leadership positions here, they will dedicate the time, effort, and resources that the plaintiffs deserve, and that this Court demands.

## CONCLUSION

For the foregoing reasons and for the reasons stated in our July 25 filing, we respectfully request that the Court appoint Labaton Sucharow LLP and DiCello Levitt & Casey LLC as Interim Class Counsel.

---

[13] *Imprelis* is an MDL consumer class action against DuPont in which DLC, Labaton Sucharow, and their co-counsel reached a settlement providing more than $550 million in actual benefits to class members.

Dated: August 1, 2018                    Respectfully submitted,

                                         **DICELLO LEVITT & CASEY LLC**

                                         By: */s/ Adam J. Levitt*
                                         Adam J. Levitt
                                         John E. Tangren
                                         Amy E. Keller
                                         Adam Prom
                                         Ten North Dearborn Street, Eleventh Floor
                                         Chicago, Illinois  60602
                                         Tel: (312) 214-7900
                                         alevitt@dlcfirm.com
                                         jtangren@dlcfirm.com
                                         akeller@dlcfirm.com
                                         aprom@dlcfirm.com

                                         *Counsel for Plaintiff Alex Palatiello*

                                         **LABATON SUCHAROW LLP**

                                         By: */s/ Gregory S. Asciolla*
                                         Gregory S. Asciolla (admitted *pro hac vice*)
                                         Christopher J. McDonald (admitted *pro hac vice*)
                                         Karin E. Garvey (*pro hac vice* pending)
                                         Matthew J. Perez (admitted *pro hac vice*)
                                         Jonathan Crevier (*pro hac vice* pending)
                                         140 Broadway
                                         New York, New York  10005
                                         Tel: (212) 907-0700
                                         gasciolla@labaton.com
                                         cmcdonald@labaton.com
                                         kgarvey@labaton.com
                                         mperez@labaton.com
                                         jcrevier@labaton.com

                                                        —*and*—

                                         **ZILIAK LAW, LLC**
                                         Zachary J. Ziliak
                                         141 West Jackson Boulevard, Suite 4048
                                         Chicago, Illinois  60604
                                         Tel: (312) 462-2350
                                         zachary@ziliak.com

                                         *Counsel for Plaintiff Amy Huang*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 1, 2018, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>*/s/ Adam J. Levitt*    </u>
Adam J. Levitt