**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES. | MDL No. 2842<br>Case No. 18-cv-04171<br>Honorable Manish S. Shah |

**REPLY IN SUPPORT OF THE CONSENSUS PROPOSAL**

**INTRODUCTION**

Plaintiffs in a supermajority of the actions (20 of 26) now support Christopher M. Burke of Scott+Scott and Kimberly A. Justice of Kessler Topaz to be Co-Lead Counsel with a three-person steering committee consisting of David C. Frederick of Kellogg Hansen, Hilary Scherrer of Hausfeld, and an individual selected pursuant to the Private Securities Litigation Reform Act ("PSLRA"), and George A. Zelcs of Korein Tillery as liaison counsel (collectively, "Consensus Counsel" or "Consensus Proposal"). That support is no small matter. One of the most significant challenges on the plaintiffs' side in complex litigation is working cooperatively with many different firms representing different interests and avoiding quarrels that can then spill over to the court and harm the plaintiffs. Consensus Counsel's ability to draw this level of support and cooperation at this contentious stage bodes well. Contrary to others' claims, this support is not driven by politics; it is a vote of confidence in favor of Consensus Counsel.

That confidence is well-justified. *First*, Consensus Counsel have demonstrated their commitment to this litigation by providing specific details of their investigation that are not matched by competing proposals. *Second*, Consensus Counsel have shown that they have done more to advance the claims in this litigation than any competing firms, including being the first to file and to seek discovery, being the first to develop a legal theory against CBOE, and being the first to identify and name some of the alleged manipulators. *Third*, their qualifications are unimpeachable. *Fourth*, the Consensus Proposal is the only proposal that has diverse leadership, which has existed from the start of this litigation. And Consensus Counsel are some of the few firms able to identify concrete examples where they have provided younger attorneys with first-chair opportunities, including oral argument and depositions.

**ARGUMENT**

I.  **Plaintiffs Overwhelmingly Support The Consensus Proposal**

    A.  **Most Plaintiffs Support The Appointment Of Consensus Counsel**

Plaintiffs in 20 of the 26 actions in this MDL support the Consensus Proposal. *See* Ex. A. Notably, plaintiffs in 14 actions support the proposal despite their chosen counsel not being slated for a leadership position.[1] As Plaintiff Quint explained, "[t]he strength of the proposal persuaded many firms that are unquestionably qualified to serve in a leadership role in this litigation to support it rather than separately moving for Court-appointment themselves." Quint Br. 1 (ECF No. 88). This support is a testament to the work already done by Consensus Counsel to develop and advance this litigation and to the trust that other plaintiffs have in Consensus Counsel to organize, manage, and prosecute this MDL. None of the four competing proposals received a fraction of that support.[2]

That Consensus Counsel were able to garner this overwhelming support during the "intense competition" for appointment to leadership positions shows they will be good stewards for this litigation. *Manual for Complex Litigation (Fourth)* § 10.224 (2004). For example, the very first task for lead counsel will be to "wrangle the existing complaints and theories" into a consolidated complaint "with input from other plaintiffs' counsel." July 11, 2018 Tr. 12. Lead counsel must interview the plaintiffs to determine which are best suited to lead the class (or

---

    [1] Certain counsel supporting the Consensus Proposal also filed separate applications to be considered for a leadership position in this case if the Court were to construct the leadership differently, including: Wolf Haldenstein (ECF No. 69); Kaplan Fox (ECF Nos. 70-71); Robins Kaplan (ECF No. 75); Berger & Montague (ECF No. 80); Gustafson Gluek (ECF No. 81); Wexler Wallace (ECF No. 81); Stull, Stull & Brody (ECF No. 88); Bleichmar Fonti (ECF No. 89); and Nussbaum Law Group (ECF No. 90).

    [2] The competing proposals were submitted by (1) Quinn Emanuel and Robbins Geller, which represent Bueno ("QE+RG"); (2) Labaton Sucharow and DiCello, Levitt & Casey, which represent Huang and Palatiello ("LS+DLC"); (3) Hagens Berman, which represents Terwilliger; and (4) Cohen Milstein and Cafferty Clobes, which represent Atlantic Trading ("C+C Firms").

classes) and evaluate the different factual and legal theories asserted. This process necessarily requires cooperating with other plaintiffs to understand their investigations, many of which have undoubtedly unearthed information that is not currently alleged. Through all of this, lead counsel must keep an open mind about what they can incorporate from other counsel to craft the strongest complaint. Failing to do that is a disservice to the plaintiffs and a recipe for future infighting. Consensus Counsel have already begun these efforts.[3]

In recognition of the importance of consensus and collaboration, courts routinely appoint to leadership roles the firms that have garnered the most support from other plaintiffs. This Court should follow that practice here in light of Consensus Counsel's "ability . . . to pull together many qualified law firms and lawyers and avoid factional argument[s] of firms with differently perceived interests." Wolf Haldenstein Br. 2 (ECF No. 69); *see In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*, 2015 WL 1216318, at *2 (N.D. Ill. Mar. 5, 2015) (appointing lead counsel that had "acquired the confidence and trust of their colleagues" as evidenced by a "supermajority" of support); *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 292 (N.D. Ill. 2014) (appointing lead counsel that had "the support of all counsel for plaintiffs" except one); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2006 WL 2038650, at *2 (E.D.N.Y. Feb. 24, 2006) (appointing lead counsel that had "demonstrated their ability to work cooperatively" even with "numerous non-lead counsel" and that had "the support of a larger and more diverse group of clients"); *see also Manual for Complex Litigation (Fourth)* § 10.224 ("It is important to assess . . . the attorneys' ability to

---

[3] Those efforts include determining which claims are not viable. For example, three plaintiffs assert a "shared monopoly" claim under Section 2 of the Sherman Act. *See* Bueno Compl. ¶ 170 ("The John Doe Defendants possessed monopoly power . . . ."). But, in the Seventh Circuit, a Section 2 "claim can only accuse one firm of being a monopolist." *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 713 (7th Cir. 2003).

command the respect of their colleagues and work cooperatively" and whether "an attorney may have generated personal antagonisms during prior proceedings that will undermine his or her effectiveness in the present case.").

Some firms have wrongly suggested that Consensus Counsel secured support through improper commitments to other firms. *See* QE+RG Br. 15 (ECF No. 74). Mr. Burke and Ms. Justice will delegate responsibility to other firms only to the extent that it serves the interests of the plaintiffs and the class. That is true even for the proposed members of the steering committee and liaison counsel, for the 14 additional firms signing this brief, and for all other firms involved in this litigation. *See, e.g.*, Wolf Haldenstein Br. 3 n.2 ("no promises, guarantees or understandings"); Hausfeld Br. 15 (ECF No. 89) (no "promised work or compensation").

**B. There Is Little Disagreement With The Consensus Proposal's Structure**

The four competing proposals appear to be driven not by major disagreements on case structure but by their proponents' understandable desire to serve in leadership positions. All proposals provide for either two or three co-lead counsel, and all proposals (but one) provide for a three- or four-firm steering committee. There are only two meaningful structural differences between the competing proposals and the Consensus Proposal.

*First*, Hagens Berman and the C+C Firms propose to set aside one lead counsel slot to be filled by counsel selected pursuant to the PSLRA. While the PSLRA requires appointment of lead counsel for the PSLRA claims, *see* 15 U.S.C. § 78u-4(a)(3)(B)(v), neither of these proposals explains why PSLRA lead counsel must serve as lead counsel for the entire MDL. This Court has already rejected the notion that negligence claims must have a separate lead counsel. *See* July 11, 2018 Tr. 13. There is no reason to treat the securities claims – which have only been asserted in 2 of 26 actions – any differently. Indeed, consistent with the Consensus Proposal, steering committee members have served as lead counsel for portions of other complex litigation.

- 4 -

*See*, *e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, ECF No. 64 (D. Minn. May 15, 2014) (appointing a "Coordinating Lead Counsel" and three sub-"Lead Counsel" for portions of the litigation).

  *Second*, Hagens Berman urges there should be no steering committee because that would lead to "duplication and . . . wasted effort." Hagens Berman Br. 1 (ECF No. 72). Consensus Counsel respectfully disagree with Hagens Berman's criticisms of steering committees, which are recommended by federal judges and prominent practitioners for litigation with varied interests like this MDL. *See Manual for Complex Litigation* §§ 10.221, 10.224; Duke Law Center for Judicial Studies, *MDL Standards and Best Practices* 30 (Sept. 11, 2014). Nonetheless, Consensus Counsel share Hagens Berman's concerns with avoiding waste. Mr. Burke and Ms. Justice each have personally served as lead counsel with responsibility for determining the responsibilities of and overseeing a steering committee. They will adopt best practices for billing and expense reporting drawn from proposals made and used successfully by Consensus Counsel and will carefully monitor the monthly reports for compliance. For example, Mr. Burke and Michael Hausfeld employed such a protocol as co-lead counsel in the foreign exchange benchmark rates antitrust litigation. They ensured that counsel working on the case effectively pooled resources; assigned appropriate tasks to attorneys based on expertise, skills, and experience; collected and audited monthly time and expense reports; and imposed caps on rates for document review and expenses. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-7789, ECF No. 939, ¶¶ 111-112, 229 (S.D.N.Y. filed Jan. 12, 2018). These efforts kept costs low in comparison to the magnitude of the work (review of millions of pages of documents and trading data) and stakes (more than $2.3 billion in settlement).

## II. Consensus Counsel Have Done The Most To Develop This Litigation

The leadership applications confirm that the work already done by Consensus Counsel sets them apart from competing firms. *See* Fed. R. Civ. P. 23(g)(1); *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL No. 2147, ECF No. 47, at 2-3 (N.D. Ill. June 23, 2010). Consensus Counsel described their investigation, including identifying (without naming) more than 20 witnesses interviewed and the subject matter of those interviews, investigative leads with respect to the identity of manipulators, the regulators with whom they met, the work done by consultants, the trading data analyzed, and their out-of-pocket expenses. *See* Decl. of Amanda Lawrence ¶¶ 6-11, 18, 20 (ECF No. 84); Decl. of George Zelcs ¶¶ 6-12, 16-17 (ECF No. 85); Hausfeld Br. 5-7; Kessler Topaz Br. 9-10 (ECF No. 91). Competing firms' submissions tellingly did not provide the same level of detail. *See* Hagens Berman Br. 9-10; QE+RG Br. 3-4; C+C Firms Br. 9-10 (ECF No. 63); LS+DLC Br. 7-8 (ECF No. 73).[4]

Consensus Counsel's efforts unsurprisingly have resulted in them being pioneers for this litigation. Consensus Counsel were the first to begin investigating VIX manipulation in April 2017. *See* Lawrence Decl. ¶ 4; Zelcs Decl. ¶ 5. They filed the first complaint in the MDL and had even received court approval to engage in expedited discovery of trading records (before all competing firms except the C+C Firms had even filed their complaints). *See* Kessler Topaz Br. 9-10. They filed the first complaint to name CBOE as a defendant for failing to prevent VIX manipulation – a claim that QE+RG assert should be the focus of the litigation. *See* Scott+Scott Br. 4-5, 9 (ECF No. 83); QE+RG Br. 1, 13-15. They filed the first complaint to name some of

---

[4] QE+RG state that they have "invested over a million dollars," but that appears to include attorney time "evaluating the claims." QE+RG Br. 3. In addition to their sizable out-of-pocket expenses, Consensus Counsel have spent even more in attorney time and will be contributing all of those sunk costs to pursuing plaintiffs' claims.

the alleged manipulators. *See* Hausfeld Br. 5-7. And they have developed the most detailed allegations of manipulation. *See* Scott+Scott Br. 9.

By contrast, the competing firms have not shown any comparable contribution to this litigation. Several firms applying for leadership have highlighted the various analyses of VIX manipulation they included in their complaints. *See* Hagens Berman Br. 9-10; QE+RG Br. 3-4; C+C Firms Br. 9-10. Consensus Counsel believe that their allegations of manipulation are better developed. *See, e.g.*, Tomasulo Compl. ¶¶ 67-75, 87; Pels Compl. ¶¶ 64-73, 90-96. Consensus Counsel, however, will refrain from acting detrimentally to plaintiffs' interests by criticizing the allegations in others' complaints because variations of those allegations may ultimately appear in the consolidated complaint. It suffices to say there are differences of opinion whether allegations touted by competing firms merely repackage the Griffin-Shams Study or are inaccurate.

QE+RG argue that they have contributed through their "superior knowledge of the applicable law," which led them to assert securities claims where others had not. *See* QE+RG Br. 7-8. Although this litigation involves many leading securities practitioners, counsel in every action (but two) decided against bringing securities claims. Consensus Counsel evaluated securities claims and determined that it would be premature to assert them and assume that other counsel did the same. This is a unique case with strong evidence of manipulation but less evidence about the identities of the manipulators. Early discovery is crucial to identify the manipulators, which is why Kessler Topaz (the first to file) immediately sought and received permission to subpoena trading records from CBOE. Consensus Counsel recognized that bringing securities claims would have frustrated those efforts by triggering the automatic stay under the PSLRA, which CBOE will almost certainly argue applies to *all* claims in this MDL.

*See* 15 U.S.C. § 78u-4(b)(3)(B); *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006).

There also would have been no countervailing benefit sufficient to offset the impact of the automatic stay by asserting securities claims immediately. With limited exceptions, plaintiffs (including QE+RG) have named only CBOE as a defendant. For CBOE, the allegations supporting the securities claims mirror those for the commodities claims. *Compare* Bueno Compl. ¶¶ 176-185 (asserting securities claims based on allegations that the VIX was "highly susceptible to manipulation" and that CBOE "knew or should have known of the manipulation of VIX" but did nothing in order to avoid "scar[ing] away . . . investors"), *with id.* ¶¶ 186-193 (same for commodities claims). However, the securities claims (but not the commodities claims) are subject to the PSLRA's heightened pleading requirements. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321-22 (2007). And for the alleged manipulators, either targeted discovery before a consolidated complaint or amendment of the securities claims once the manipulators are identified would necessarily be required. The possibility that securities claims may properly be pled later in this litigation – as well as some plaintiffs' assertion of securities claims – is why the Consensus Proposal highlighted securities litigation experience.

Similarly, Consensus Counsel disagree with QE+RG's two-phase motion-to-dismiss proposal. *See* QE+RG Br. 13-14. That proposal makes the viability of all claims (including against the alleged manipulators) hinge on the success of the claims against CBOE. But CBOE is likely to have unique arguments that could result in dismissal even if the Court finds it plausible that manipulation occurred. Accordingly, it would be in plaintiffs' best interests to seek expedited discovery of trading records prior to motions to dismiss so that the outcome of the claims against the manipulators did not depend on the outcome of the claims against CBOE.

Consensus Counsel appreciate that this Court's "tentative view" was not to grant such discovery, July 11, 2018 Tr. 14, but would welcome the opportunity to address the issue at the status hearing or in briefing. In brief, prior to filing a consolidated complaint, Consensus Counsel would seek targeted discovery of trading records to identify manipulators. Because the CFTC, SEC, and FINRA are already investigating VIX manipulation, such trading records may have already been prepared (or produced) and could be given to Consensus Counsel with little burden. That discovery would be justified by the strong evidence of manipulation (apparent even before discovery), would strengthen plaintiffs' arguments, and would obviate the delay and inefficiency inherent in two rounds of motions to dismiss.[5]

### III. Consensus Counsel Are Well Qualified To Lead This Litigation

There can be no dispute about the sufficiency of Consensus Counsel's qualifications or about the quality of the results they achieve on behalf of their clients. In brief, Mr. Burke currently serves as co-lead counsel of one of the two largest ongoing financial manipulation cases (foreign exchange benchmarks), which has resulted in more than $2.3 billion of settlements. Ms. Justice spent nearly a decade as an antitrust prosecutor, including on the other largest ongoing financial manipulation case (LIBOR). Hausfeld is co-lead counsel for the private-side of the LIBOR litigation, and Ms. Scherrer has day-to-day responsibility for that litigation. Mr. Frederick has argued countless appeals (including 50 in the Supreme Court and the United States' antitrust action against Microsoft). And Mr. Zelcs has been co-lead counsel (with Mr. Frederick) in litigation against financial institutions on behalf of the National Credit

---

[5] *See In re Broiler Chicken Antitrust Litig.*, 2017 WL 4322823, at *3-4, *7 (N.D. Ill. Sept. 28, 2017) (ordering production of documents previously produced to the government prior to a motion to dismiss ruling); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-3690, ECF No. 75, at 4-5 (N.D. Ill. Mar. 4, 2010) (same); *In re Platinum & Palladium Commodities Litig.*, No. 10-3617, ECF No. 59, at 1-2 (S.D.N.Y. Nov. 30, 2010) (same); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 2194802, at *1 (C.D. Cal. June 1, 2010) (same but prior to consolidated complaint filing).

Union Administration (which has resulted in more than $5 billion in settlements). The experience and accomplishments of their respective teams are as impressive.

### IV. Consensus Counsel Value Diversity And Development Of Younger Attorneys

Consensus Counsel would also do the most to promote diversity and development of younger attorneys. The Consensus Proposal is the only proposal that would place female attorneys in leadership positions (Ms. Justice and Ms. Scherrer).[6] Moreover, the litigation teams of Consensus Counsel have included these female lead counsel and other diverse team members from the very start. They did not merely add them after the Court expressed its interest in diversity. *See* Scott+Scott Br. 11-12; Kessler Topaz Br. 2. Consensus Counsel have also demonstrated that they actually provide first-chair opportunities to their younger attorneys, including arguing in court and taking and defending depositions. *See* Scott+Scott Br. 14; Kessler Topaz Br. 8. Indeed, two of Kessler Topaz's younger attorneys appeared before this Court regarding the CBOE subpoena. While Consensus Counsel do not doubt the sincerity of competing firms' statements about developing their younger attorneys, several of those firms do not present any concrete examples where they have entrusted younger attorneys with such opportunities, particularly in this litigation. *See* Hagens Berman Br. 12-14; QE+RG Br. 12-13.[7]

### CONCLUSION

For the foregoing reasons, the Court should adopt the Consensus Proposal.

---

[6] Certain competing proposals nominate firms rather than individuals, but their applications make clear which individuals will head the litigation. *See MDL Standards and Best Practices* 29 ("Although some courts appoint firms to serve in leadership positions, it is usually preferable to appoint individual lawyers who can be held accountable . . . .").

[7] As their sole example of opportunities for younger attorneys, QE+RG note (at 13) that Quinn Emanuel "*sen[t]* an associate to *handle* oral argument before the MDL panel" (emphases added). Yet Quinn Emanuel (along with all other counsel advocating for transfer to the Northern District of Illinois) agreed not to use any persons put forward to argue in the MDL as a justification for a leadership position.

Dated: August 1, 2018

Respectfully submitted,

| | |
|---|---|
| **SCOTT+SCOTT**<br>**ATTORNEYS AT LAW LLP**<br><br>/s/ *Christopher M. Burke*<br>Christopher M. Burke<br>Kate Lv<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel: (619) 233-4565<br>cburke@scott-scott.com<br><br>Kristen M. Anderson<br>Amanda F. Lawrence<br>J. Alex Vargas<br>The Helmsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Tel: (212) 233-6444<br><br>*Attorneys for Jeffery Tomasulo and Breakwater Trading LLC*<br><br>**KELLOGG HANSEN TODD**<br>**FIGEL & FREDERICK PLLC**<br><br>/s/ *David C. Frederick*<br>David C. Frederick<br>Silvija A. Strikis<br>Daniel V. Dorris<br>Joanna T. Zhang<br>David K. Suska<br>1615 M Street, N.W., Suite 400<br>Washington D.C. 20036<br>Tel: (202) 326-7900<br>dfrederick@kellogghansen.com<br><br>*Attorneys for John Pels* | **KESSLER TOPAZ**<br>**MELTZER & CHECK, LLP**<br><br>/s/ *Kimberly A. Justice*<br>Kimberly A. Justice<br>Joseph H. Meltzer<br>Sharan Nirmul<br>Geoffrey C. Jarvis<br>Samantha Holbrook<br>Joshua A. Materese<br>Zachary Arbitman<br>280 King of Prussa Road<br>Radnor, PA 19087<br>Tel: (610) 667-7706<br>kjustice@ktmc.com<br><br>*Attorneys for David Samuel and Dale Cary*<br><br>**HAUSFELD LLP**<br><br>/s/ *Hilary K. Scherrer*<br>Hilary K. Scherrer<br>Michael D. Hausfeld<br>1700 K Street, N.W., Suite 650<br>Washington, D.C. 20006<br>Tel: (202) 540-7200<br>hscherrer@hausfeld.com<br><br>Scott Martin<br>Jeanette Bayoumi<br>33 Whitehall Street, 14th Floor<br>New York, NY 10004<br>Tel: (646) 357-1100<br><br>*Attorneys for William Siegel* |

**NUSSBAUM LAW GROUP, P.C.**

/s/ *Linda P. Nussbaum*
Linda P. Nussbaum
Bart D. Cohen
Fred T. Isquith
1211 Avenue of the Americas
40th Floor
New York, NY 10036-8718
Tel: (917) 438-9102
lnussbaum@nussbaumpc.com

*Attorneys for Eric J. Levy,*
*Living Trust UA dated 1/21/10,*
*Eric Levy Roth IRA, Avril E. Levy,*
*Living Trust UA dated 1/21/10,*
*and Thomas Sanduski*

**STULL, STULL & BRODY**

/s/ *Melissa R. Emert*
Melissa R. Emert
Michael J. Klein
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
memert@ssbny.com

*Attorneys for David Quint*

**GUSTAFSON GLUEK PLLC**

/s/ *Michelle J. Looby*
Michelle J. Looby
Daniel E. Gustafson
Jason S. Kilene
Joshua J. Rissman
220 South Sixth Street #2600
Minneapolis, MN 55402
Tel: (612) 333-8844
mlooby@gustafsongluek.com

*Attorneys for Robert Etten*

**KOREIN TILLERY LLC**

/s/ *George A. Zelcs*
George A. Zelcs
Robert E. Litan
Randall P. Ewing, Jr.
Chad E. Bell
205 North Michigan Plaza, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750
gzelcs@koreintillery.com

Stephen M. Tillery
Michael E. Klenov
Carol O'Keefe
One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Tel: (314) 241-4844

*Attorneys for Jeffery Tomasulo and*
*Breakwater Trading LLC*

**WEXLER WALLACE LLP**

/s/ *Mark R. Miller*
Mark R. Miller
Kenneth A. Wexler
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
mrm@wexlerwallace.com

*Attorneys for Robert Etten*

**BERGER & MONTAGUE, P.C.**

/s/ *Eric L. Cramer*
Eric L. Cramer
Michael C. Dell'Angelo
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net

*Attorneys for Thomas J. Sanduski*

**MCCUNE WRIGTH AREVALO, LLP**

/s/ *Derek Y. Brandt*
Derek Y. Brandt
100 North Main Street, Suite 11
Edwardsville, IL 62025
Tel: (618) 307-6116
dyb@mccunewright.com

Richard D. McCune
3281 Guasti Road, Suite 100
Ontario, CA 91761
Tel: (909) 557-1250

*Attorneys for Gary M. Beck*

**BLEICHMAR FONTI & AULD LLP**

/s/ *Lesley E. Weaver*
Lesley E. Weaver
Matthew S. Weiler
555 12th Street, Suite 1600
Oakland, CA 94607
Tel: (415) 445-4003
lweaver@bfalaw.com

*Attorneys for William Siegel*

**FREED KANNER LONDON & MILLEN, LLC**

/s/ *Michael J. Freed*
Michael J. Freed
Douglas A. Millen
Michael E. Moskovitz
Robert J. Wozniak
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
mfreed@fklmlaw.com

*Attorneys for Cassandra Trading Group, LLC, and Susan Koza*

**LOCKRIDGE GRINDAL NAUEN PLLP**

/s/ *W. Joseph Bruckner*
W. Joseph Bruckner
Heidi M. Silton
Anna M. Horning Nygren
Brian D. Clark
Arielle S. Wagner
100 Washington Ave., South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
wjbruckner@locklaw.com

*Attorneys for Haldeman Realty Co., Inc.*

**ROBINS KAPLAN LLP**

/s/ *Hollis Salzman*
Hollis Salzman
Kellie Lerner
Noelle Feigenbaum
399 Park Avenue
Suite 3600
New York, NY 10022
Tel: (212) 980-7400
hsalzman@robinskaplan.com

*Attorneys for Brian Barry*

**HART MCLAUGHLIN & ELDRIDGE**

/s/ *Steven A. Hart*
Steven A. Hart
John Marrese
22 W Washington Street #1600
Chicago, IL 60602
Tel: (312) 955-0545
shart@hmelegal.com

*Attorneys for Brian Barry*

- 13 -

| | |
|---|---|
| **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC** | **THE ROSEN LAW FIRM, P.A.** |
| /s/ *Carl V. Malmstrom* | /s/ *Laurence Rosen* |
| Carl V. Malmstrom | Laurence Rosen |
| 70 West Madison Street, Suite 1400 | 275 Madison Avenue |
| Chicago, IL 60602 | 34th Floor |
| Tel: (312) 984-0000 | New York, NY 10016 |
| malmstrom@whafh.com | Tel: (866) 767-3653 |
| | lrosen@rosenlegal.com |
| Fred Taylor Isquith | |
| Thomas H. Burt | *Attorneys for Brian Barry* |
| Matthew M. Guiney | |
| Kevin G. Cooper | **KAPLAN FOX & KILSHEIMER LLP** |
| 270 Madison Avenue | |
| New York, NY 10016 | /s/ *Hae Sung Nam* |
| Tel: (212) 545-4600 | Hae Sung Nam |
| | Elana Katcher |
| Betsy C. Manifold| | Robert N. Kaplan |
| 750 B. Street, Suite 2770 | Frederic S. Fox |
| San Diego, CA 92101 | Gregory K. Arenson |
| Tel: (619) 239-4599 | Donald R. Hall |
| | Jeffrey P. Campisi |
| *Attorneys for Tony Elich* | 850 Third Avenue, 14th Floor |
| | New York, NY 10022 |
| | Tel: (212) 687-1980 |
| | hnam@kaplanfox.com |
| | |
| | Gary L. Specks |
| | 423 Sumac Road |
| | Highland Park, IL 60035 |
| | Tel: (847) 831-1585 |
| | |
| | *Attorneys for Christopher Musso* |

**CERTFICATE OF SERVICE**

I, hereby certify that, on August 1, 2018, I caused a copy of the foregoing Reply in Support of the Consensus Proposal to be served on all counsel of record via the Court's ECF system.

/s/ *George A. Zelcs*