# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION | ) ) ) ) ) | No. 18-cv-4171<br>MDL No. 2842<br>The Honorable Manish J. Shah<br><br>This Document Relates to All Cases |

# RESPONSE IN FURTHER SUPPORT OF APPOINTING COHEN MILSTEIN AND CAFFERTY CLOBES TO THE RULE 23(g) LEADERSHIP STRUCTURE

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................... ii

I.      INTRODUCTION ..........................................................................................................1

II.     ARGUMENT..................................................................................................................3

        A.      No Applicants Have Contributed More than the C+C Firms ..................................3

        B.      The C+C Firms' Proposed Structure is the Most Appropriate ................................7

        C.      No Plaintiffs Have Stronger Claims than the C+C Firms' Clients ........................10

        D.      The C+C Firms Reflect Diversity, Inclusion and Opportunity..............................10

III.    CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

**Statutes and Rules**

Fed. R. Civ. P. 23(g) ...........................................................................................................1, 6

7 U.S.C. § 25(a)(1)(B)-(D) .......................................................................................................9

**Other Sources**

*Managing Related Proposed Class Actions in Multidistrict Litigation*,
Federal Judicial Center Pocket Guide Series (May 31, 2018) ..........................................................8

SEC Release No. 34-49563, File No. SR-CBOE-2003-40 (April 14, 2004) ..................................9

**I.      INTRODUCTION**

Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Cafferty Clobes Meriwether & Sprengel LLP ("Cafferty Clobes") (collectively, the "C+C Firms")[1] respectfully submit this memorandum in further support of their proposed leadership structure. The C+C Firms propose that two Co-Lead Counsel and three Steering Committee Members, appointed pursuant to Rule 23(g), represent class members with Commodity Exchange Act ("CEA"), antitrust and other claims. This leadership would prepare a single consolidated complaint together with counsel appointed pursuant to the Private Securities Litigation Reform Act ("PSLRA") to represent class members with Securities Exchange Act ("SEA") claims. The C+C Firms respectfully request that Cohen Milstein be appointed as Co-Lead Counsel, and that Cafferty Clobes be appointed either as Co-Lead Counsel or as a Steering Committee Member representing the interests of investors of Cboe VIX futures. As explained below, this structure is the most suitable result under Rule 23(g).

<u>First</u>, no other group has done more than the C+C Firms to advance the claims of the class. The C+C Firms were: the <u>first</u> and apparently the only applicants to bring claims on behalf of clients who held VIX futures through settlement; the <u>first</u> to recognize the importance of the Commodity Exchange Act ("CEA"), a decision followed by 21 subsequently-filed complaints; the <u>first</u> to file in this District, a decision followed by 16 subsequently-filed complaints; and the <u>first</u> to seek leave to serve a subpoena on the Cboe that focuses on the VIX futures settlement process during 2011 through the present. These efforts flowed naturally from the C+C Firms' breadth of experience in financial market cases involving alleged manipulation under the commodities, securities and antitrust laws.

---

[1] The C+C Firms represent Atlantic Trading USA, LLC ("Atlantic Trading"), and Victor Choa, both of whom held VIX futures through settlement.

1

Second, the C+C Firms' proposal will ensure a single, consolidated complaint that reflects the viable theories and claims. To ensure efficiency and adequate representation, the C+C Firms proposed the following structure with Cohen Milstein serving as a Co-Lead Counsel and Cafferty Clobes serving either as a Co-Lead Counsel or on the Steering Committee, representing VIX futures investors:



Co-Lead Counsel, working with PSLRA counsel, will compile common allegations and coordinate the various theories into a single, consolidated complaint. The three Steering Committee Members will ensure objective and robust representation of investors in: (1) Cboe VIX futures, (2) Cboe SPX and VIX options, and (3) Exchange Traded Products ("ETPs") traded on markets other than Cboe. These groups share common ground, and, as the Court previously indicated, there are no glaring conflicts. Given the differences in applicable statutes, markets, and pricing data, however, prudence dictates a measure of independence for the three investor types. Appointing three Steering Committee Members with discrete representation also fosters efficiency by reducing duplication. The C+C Firms do not seek to fill the Steering Committee with supporting firms. They respectfully submit that the Court is in the best position to do so (including, should the Court deem it appropriate, appointing Cafferty Clobes as the Steering Committee member to protect the interests of investors in Cboe VIX futures, rather than as Co-Lead Counsel).

2

Third, the C+C Firms' clients possess the most direct stake in this litigation. Having held Cboe VIX futures through settlement, they are the investors most directly injured by the manipulation identified in the Griffin & Shams Study, which is the common theme in all complaints in this litigation. Despite more than five months of litigation, however, it appears that the C+C Firms' clients are the only investors to expressly state that they held VIX futures through settlement. Because the C+C Firms' clients are the paradigmatic damaged class members in this litigation, their chosen counsel should be included in the leadership structure.

Fourth, the C+C Firms are second-to-none in terms of embodying the values of diversity and inclusion, as well as opportunities for junior lawyers, as reflected by their prior and continuing efforts in this case. Indeed, the attorneys at these firms who have already been working on this case include an ethnically diverse set of women and men at all levels.

For these reasons and those that follow, the C+C Firms are best suited to lead this case through the filing of the consolidated complaint and beyond.

## II.    ARGUMENT

### A.    No Applicants Have Contributed More than the C+C Firms.

Nobody has done more to advance claims on behalf of the class than the C+C Firms who were: (1) the first to identify and file CEA claims; (2) the first to file in Chicago; (3) the first to include independent economic analysis in their complaint; and (4) the first (and only) firm to serve a subpoena narrowly tailored to identify Doe Defendants with respect to final settlements during 2011 through the present. The C+C Firms had been investigating potential CEA violations in connection with the VIX futures settlement process for months when, in late February and early March 2018, two complaints were filed in New York. These complaints asserted only Sherman

3

Act conspiracy claims on behalf of ETP investors and did not focus on the VIX futures settlement process.[2]

As reflected in their complaint filed on March 9, 2018, the C+C Firms were the <u>first</u> to recognize the importance of the CEA claims for Cboe VIX futures investors who held through settlement and who were most directly harmed by the manipulation described in the Griffin and Shams Study. CEA claims obviate the need to prove a conspiracy between two or more defendants and allow recovery even in the event of independent manipulation.[3] After the C+C Firms crafted the CEA allegations, <u>21</u> complaints filed in the ensuing weeks and months asserted remarkably similar CEA claims—a resounding vindication of the C+C Firms' pioneering strategy.

The C+C Firms were the <u>first</u> to recognize Chicago as the center of the alleged manipulation and to file suit in this District—bucking the selection of the Southern District of New York. The decision to be the first filer in this District was validated by the filing of 16 subsequent complaints, as well as the JPML's centralization of this litigation in this District.

The C+C Firms' were the <u>first</u> to conduct independent economic analysis, beyond what had been done in the Griffin and Shams Study and elsewhere, by analyzing in detail the price movements of specific settlements in 2017 and 2018. *See Atlantic Trading* Complaint, ¶¶ 62-70. The decision to perform independent analysis was followed by subsequent filers, who either copied this proprietary work verbatim[4] or mirrored the strategy by conducting independent analysis.

---

[2] *See Samuel v. Does*, No. 1:18-cv-01593-AT-SN, ECF No. 1 (S.D.N.Y.) (filed Feb. 21, 2018); *David Quint v. DRW Holdings, LLC and Does*, No. 1:18-cv-01980-AT-SN, ECF No. 1 (S.D.N.Y.) (filed Mar. 5, 2018).

[3] The CEA claims also are not burdened by pleading and proof requirements under the PSLRA.

[4] *See Palatiello v. CBOE Exchange, Inc., et al.*, No. 18-cv-02490, ECF No. 1, ¶¶ 89-93 (N.D. Ill. Apr. 6, 2018); *Barry v. John Does*, No. 18-cv-02615-AT-SN, ECF No. 1, ¶¶ 54-58 (S.D.N.Y. Mar. 23, 2018).

The C+C Firms' were the <u>first</u> to seek leave to serve a subpoena narrowly tailored to VIX futures settlement manipulation during 2011 through the present. The subpoena focused on identifying Doe Defendants with the clearest motive and opportunity to engage in manipulation described in the Griffin and Shams Study. *See Atlantic Trading*, No. 1:18-cv-01754, Dkt. No. 9, at Ex. 1 (filed March 23, 2018). It was based on extensive, proprietary work, including consultation with the Griffin & Shams Study authors and other experts. It sought Cboe data that would identify entities that both held positions in Cboe VIX contracts on final settlement days and entered orders in SPX options during the hybrid opening system (the "HOSS"), together with bids, offers, cancelations, and other market communications during the HOSS. The Court deferred further efforts until after the JPML ruled. The C+C Firms' efforts serve as a valuable building block for the allegations in the upcoming consolidated complaint and subsequent litigation steps.[5]

The C+C Firms ongoing investigation has been thorough. Before filing the first complaint in this District, the C+C Firms interviewed Professor Griffin and another economist on his team concerning their work for the Griffin & Shams Study, consulted with other experts in microstructure manipulation, and spoke with former Cboe employees responsible for VIX-related compliance. The investigation continues on several fronts, including the investigative efforts led by Manuel J. Dominguez, Times Wang and an experienced in-house investigator, which has yielded additional information to aid identification of the Doe Defendants.

---

[5] Plaintiff Samuel also sought leave to serve a subpoena on the Cboe. It appears limited to January 1, 2017 to February 9, 2018, and seems to address market issues leading to the February 5, 2018 market turmoil. It does not appear to be focused on identifying entities that <u>both</u> held VIX futures and options positions on the settlement day <u>and</u> entered SPX options orders during the HOSS window through which the final settlement price for VIX futures and options is determined. *See Samuel v. John Does*, Case No. 1:18-cv-03190 (N.D. Ill.), Dkt. No. 3, at Ex. 1. In working towards the consolidated complaint, the C+C Firms would, of course, work with counsel for Samuel to gain a better understanding of their subpoena.

These efforts reflect the fact that the C+C Firms are second to none in terms of qualifications for this litigation, which takes place at the interstices of the CEA, the SEA, and the antitrust laws, in a complex financial market. Although all applicants have some at least some experience in antitrust and securities claims, most do not have the same level of experience prosecuting CEA claims. For the C+C Firms, this is familiar territory. As their resumes show, both firms have extensive experience handling commodities, antitrust, and securities class actions involving complex financial instruments. *See* Dkt. No. 63, at Ex. 3 (Cohen Milstein Resume); Dkt. No. 63, at Ex. 3 (Cafferty Clobes Resume), p. 1-2.

Cohen Milstein recently obtained a precedent-setting victory in a CEA class action against a high-frequency trading firm accused of "spoofing" the prices of futures contracts tied to the KOSPI 200, an index of Korean stocks. *See Myun-Uk Choi v. Tower Research Capital LLC,* 890 F.3d 60 (2d Cir. 2018). For Cafferty Clobes, a Chicago-based firm, the commodities markets have long been a focus, and the firm has been involved most of the major commodity futures manipulation cases in this District and beyond for the last 25 years. *See, e.g., In re Soybean Futures Litig.*, No. 89 C 7009 (N.D. Ill.) (as class counsel, helped secure $21.5 million settlement for soybean contract investors in a frequently-cited CEA manipulation); *Hershey/Kohen v. Pacific Investment Management Co., LLC,* No. 05 C 4681 (N.D. Ill.) (as liaison and class counsel, helped secure $118 million settlement for CBOT Treasury futures investors); *Ploss v. Kraft, Inc.*, No. 15 C 2397 (N.D. Ill.) (as class counsel, actively involved in discovery and other efforts in case arising from alleged manipulation of CBOT wheat contracts).

Some applicants argue that the number of firms supporting their application(s) favor their inclusion in the leadership structure over the C+C Firms. The Rule 23(g) factors do not include a popularity contest, but instead focus on the best, most efficient representation for the class.

6

Towards that end, instead of filing multiple applications with the Court, the C+C Firms filed a <u>single</u>, <u>joint</u> leadership application within the fifteen-page limitation put into place by the Court that addresses two distinct issues: (1) the propriety of their proposed structure and ensuring adequate but efficient representation of the various investor types; and (2) their unique capabilities to lead this case. The C+C Firms have worked well with all other leadership applicants and would continue to do so in this case. Indeed, cognizant of the Court's indication that it may pick and choose from competing applications, Hrg. Tr., at 14, and confident in their ability to work well with other qualified applicants, the C+C Firms intentionally left room in their structure for the participation of other firms.

Certain firms tout expenditures as a factor favoring their application. Efforts on behalf of the class such as expert or investigatory work are important. But results matter more than costs. The C+C Firms are well-equipped to fund on their own a case such as this, as is evident from their track record, which includes numerous cases requiring millions of dollars of investment. That said, efficiency matters, because reimbursement for expenses is sought from the class recovery. Thus, results, and not expenditures, should be recognized. Here, no group has advanced the class' claims further than the C+C Firms, whose efforts have been effective and efficient.

**B.     The C+C Firms' Proposed Structure is the Most Appropriate.**

The C+C Firms will efficiently lead the class through the first phase of the litigation, which the Court has identified as "wrangl[ing] the existing complaints and theories with input from other plaintiffs' counsel into a single master consolidated complaint" and ensuring that the various claims "are attended to with due diligence," and the "breadth of theories out there are adequately represented to get a master complaint done." July 11, 2018 Hrg. Tr., at 12-13. To meet the dual goals of efficiency <u>and</u> adequate representation, the C+C Firms proposed a Co-Lead and Steering

Committee structure, with Cohen Milstein serving as Co-Lead Counsel and Cafferty Clobes serving as either Co-Lead Counsel or Steering Committee, representing investors in VIX futures.

The C+C Firms set forth the most concrete proposal for "coordinating the theories and the claims." July 11, 2018 Hrg. Tr., at 13. Namely, the Co-Lead Counsel—working in tandem with PSLRA counsel—would ensure that the common allegations are well-presented and that the various theories and claims are consolidated into a single master complaint.[6] The three Steering Committee Members would ensure that the claims of their respective constituencies—(1) Cboe VIX futures investors, (2) Cboe SPX and VIX options investors, and (3) ETP investors whose instruments trade on markets other than the Cboe—are attended to with due diligence.

Some firms propose narrow leadership structures that do not require a steering committee. Others propose co-leadership with a steering committee that does not have identified roles or constituents. Yet others propose representation of "claims" regardless of product type. These structures do not possess safeguards necessary to ensure adequate representation of all claims.

Separate counsel are necessary, even in the absence of conflicts, to ensure robust presentment of the various groups' claims. "When parties' interests conflict—<u>or simply differ</u>— fair and adequate representation generally requires that separate counsel be appointed for different groups of parties." *Managing Related Proposed Class Actions in Multidistrict Litigation*, Federal Judicial Center Pocket Guide Series (May 31, 2018), at 7.[7] Here, there are differences in legal theories with the various groups. VIX futures are governed by the CEA, SPX options are governed

---

[6] Multiple Co-Leads will benefit the class if an ethical conflict arises once the Doe Defendants are identified.

[7] Available at: https://www.fjc.gov/content/331992/managing-related-proposed-class-actions-multidistrict-litigation (last visited August 1, 2018).

8

by the SEA, and VIX options are governed by either the SEA or the CEA.[8] ETPs traded on other exchanges are clearly subject to the SEA, but do not share the same contract specifications as the Cboe VIX and SPX options. The Cboe's and Cboe market participants' duties to ETP investors may be different than their duties to Cboe VIX and SPX contract investors. Also, to the extent the trader defendants manipulated the settlement price of the VIX futures (as identified in the Griffin and Shams Study), holders of VIX futures through settlement would be the most directly impacted. Finally, different pricing data and economic analysis will apply to the three distinct groups. Again, this is not to say that there are conflicts at this juncture, but there are "differences," which weigh in favor of utilizing a Steering Committee with clearly defined roles to address the differences.

The C+C Firms' proposed leadership would look closely at all of the complaints filed in this case. Co-Lead Counsel would decide which defendants to name. On that note, most of the applicants in this case chose not to name market makers or other specific trading firms as defendants. Nonetheless, the C+C firms would work closely with those who did name specific defendants to determine whether they should be included in the consolidated complaint.[9] Furthermore, the C+C Firms agree with the *Bueno* movants that the theories against the trader defendants are distinct from the theories against the Cboe defendants, and respectfully submit that

---

[8] The CEA grants a private right of action to traders of "options on . . . any commodity," 7 U.S.C. § 25(a)(1)(B)-(D), and defines "commodity" to include "all services, rights, and interests . . . in which contracts for future delivery are presently . . . dealt with." 7 U.S.C. § 1a(9). These provisions suggest VIX options traders may bring CEA claims regardless of whether such options are securities or commodities. But, in a 2004 order approving VIX options, the Securities Exchange Commission ("SEC") stated, without explanation, that "the Commission notes that the CEA does not apply to the volatility index options CBOE proposes to list and trade." SEC Release No. 34-49563, File No. SR-CBOE-2003-40 (April 14, 2004).

[9] Before any complaints named the Cboe entities as defendants, the C+C Firms alleged the Cboe entities as relevant non-parties, *Atlantic Trading* Compl., ¶¶ 17-20, identified the ease with which Cboe could spot the manipulation, *id.*, ¶¶ 85-88, and detailed the concealing effect of Cboe's knee-jerk reaction to the Griffin & Shams Study. Id., ¶¶ 90-93. After careful evaluation, however, the C+C Firms determined that prudence dictated obtaining Cboe records and identifying the Doe Defendants before adding other claims— including any claims against the Cboe entities.

9

any specific plan to advance the case beyond the consolidated complaint should await the filing of the consolidated complaint and further consultation with the Court.

### C.   No Plaintiffs Have Stronger Claims than the C+C Firms' Clients.

After more than five months of complaint filing and the opening round of leadership applications, the C+C Firms appear to be the only applicants who represents VIX futures investors who held through final settlement—Atlantic Trading, a sophisticated proprietary trading firm, and Victor Choa, an individual trader who is also willing to serve as a class representative. They are immune from arguments frequently raised by defendants in CEA and antitrust cases, such as standing, causation and damages. Others indicate that their clients held VIX-related instruments through settlement, but it is unclear whether these instruments were VIX futures. Because Cboe specifications mandate that VIX futures settle to the allegedly manipulated settlement price, the C+C Firms' clients are best situated to argue that the manipulation directly impacted them, and deference should be given to their choice of counsel.

### D.   The C+C Firms Reflect Diversity, Inclusion and Opportunity.

The C+C Firms are second-to-none in terms of having already included a diverse set of attorneys in significant matters in this litigation. *See* Motion, Dkt. No. 63, at 8-9.

### III.   CONCLUSION

For the foregoing reasons, the undersigned respectfully submit that Cohen Milstein should be appointed as Co-Lead Counsel, and Cafferty Clobes should be appointed either as Co-Lead Counsel or as a Steering Committee Member representing VIX futures investors.

Dated: August 1, 2018            Respectfully submitted,

By: *s/* Anthony F. Fata
Anthony F. Fata
Daniel O. Herrera
Christopher P.T. Tourek
**CAFFERTY CLOBES MERIWETHER &
    SPRENGEL LLP**
150 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 782-4880
Fax: (312) 782-4485
afata@caffertyclobes.com
dherrera@caffertyclobes.com
ctourek@caffertyclobes.com

By: *s/* Michael Eisenkraft
Michael Eisenkraft
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine St., 14th Floor
New York, NY 10005
Tel: (212) 838-0177
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com

Carol V. Gilden
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle St., Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

Times Wang
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
twang@cohenmilstein.com

*Counsel for Plaintiff Atlantic Trading USA, LLC*
No. 1:18-cv-01754 (N.D. Ill.)

**CERTIFICATE OF SERVICE**

I, Anthony F. Fata, an attorney, hereby certify that on August 1, 2018, service of the ***Response in Further Support of Appointing Cohen Milstein and Cafferty Clobes to the Rule 23(g) Leadership Structure*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                                        *s/ Anthony F. Fata*
                                        Anthony F. Fata