**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION | Case No. 1:18-cv-04171<br><br>MDL No. 2842<br><br>Honorable Manish S. Shah |

# CBOE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Cboe Global Markets, Inc., Cboe Futures Exchange, LLC, and Cboe Exchange, Inc. (collectively "Cboe"), respectfully submit this memorandum in opposition to Plaintiffs' motion for expedited discovery (ECF No. 164, "Mot.").

## INTRODUCTION

Plaintiffs claim that they are merely seeking discovery so that they "can attempt to identify the Doe Defendant manipulators." (Mot. at 1.) That is not what their requests seek. Instead, Plaintiffs seek to pursue merits discovery, presumably to remedy the substantive defects in their complaint. The Private Securities Litigation Reform Act ("PSLRA") was enacted to curtail precisely that type of discovery request.

In a typical case involving a request for "Doe discovery," the plaintiff alleges a specific instance of wrongdoing, and seeks targeted discovery to determine the wrongdoer's name. For instance, a plaintiff might allege that he was mistreated by a police officer, and seek discovery to determine the name of the police officer on duty that day. A plaintiff might learn that an Internet user with a particular IP address committed copyright infringement, and therefore may serve a subpoena to determine the name of the individual who was using that IP address. Or a plaintiff might allege that a particular quote, order, or trade was improper, and therefore may seek targeted discovery to determine the identity of the individual who placed the quote or order that may have resulted in a trade.

That is emphatically not the type of discovery Plaintiffs pursue here. Plaintiffs are not pursuing discovery to determine people's names. Nor does Plaintiffs' complaint allege that particular quotes, orders, or trades were tainted by wrongdoing. Rather, Plaintiffs claim, as they reiterated at the status on the instant motion (Tr. 11/1/18 Hearing, ECF No. 173, at 12:15–18), that every VIX settlement for the last 14 years might have been *susceptible* to manipulation, based on

1

alleged inferences drawn from broad, aggregate data. Such generalized suspicions are insufficient to state a claim for relief, which is why Plaintiffs are now fishing for data in hope of determining whether any manipulation has occurred, and if so, when. To that end, Plaintiffs have served incredibly broad data requests, which seek information well beyond what would be necessary to determine the identity of a market participant who placed a particular purportedly suspicious quote or order that may have resulted in a trade.

The PSLRA bars Plaintiffs' discovery requests. The purpose of the PSLRA's automatic discovery stay is to prevent litigants from doing what Plaintiffs are doing here: filing private securities lawsuits without sufficient information, hoping that a claim will emerge during discovery. Accordingly, the automatic discovery stay under the PSLRA only may be lifted in "exceptional circumstances" where plaintiffs show that *particularized* discovery is *necessary* to preserve evidence or prevent undue prejudice. Plaintiffs cannot meet this high burden.

At the hearing on this matter, the Court suggested that discovery might be inevitable. But it is not: Cboe is filing a motion to dismiss, and non-exchange defendants would have a right to do so as well. If those motions are granted, there would be no discovery. That is why the PSLRA requires that motions to dismiss be adjudicated before discovery. Accordingly, the Court should decide Cboe's motion to dismiss before any discovery proceeds.

## ARGUMENT

### I.    Plaintiffs Have Not Met Their Burden to Show that the PSLRA Stay Should Be Lifted.

The PSLRA provides that in all private actions under the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss" except under narrow circumstances. 15 U.S.C. § 78u-4(b)(3)(B). The PSLRA's mandatory stay applies by its terms to this case, and Plaintiffs have not shown that any exception applies.

### A. The Text and Purpose of the PSLRA Require Enforcing the PSLRA's Automatic Stay Provision.

The PSLRA provides that discovery be stayed while a motion to dismiss is pending "unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."[1] 15 U.S.C. § 78u-4(b)(3)(B). Congress passed the PSLRA in order to curb "abuse in private securities lawsuits," including "the routine filing of lawsuits . . . with only faint hope that the discovery process might lead eventually to some plausible cause of action." H.R. Rep. No. 104-369, at 31 (1995) (Conf. Rep.). Accordingly, Congress determined that "discovery should be permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint*." S. Rep. No. 104–98, at 14 (1995) (emphasis added).

Plaintiffs' discovery requests are precisely the type of requests that the PSLRA was designed to prevent. "The purposes of the automatic stay provision are (1) to prevent the imposition of any unreasonable burden on a defendant before disposition of a motion to dismiss the complaint; and (2) to avoid the situation in which a plaintiff sues without possessing the requisite information to satisfy the PSLRA's heightened pleading requirements, then uses discovery to acquire that information and resuscitate a complaint that would otherwise be dismissed." *Sarantakis v. Gruttadauria*, No. 02 C 1609, 2002 WL 1803750, at *1 (N.D. Ill. Aug. 5, 2002); *see also Hallberg v. Am. Agencies Gen. Agencies, Inc.*, No. 04 C 3245, 2005 WL 563211,

---

[1] The PSLRA applies here to stay discovery pertaining to all of Plaintiffs' claims. *See Angell Invs., L.L.C. v. Purizer Corp.*, No. 01 C 6359, 2001 WL 1345996, at *2 (N.D. Ill. Oct. 31, 2001) (rejecting argument that related state-law claims need not be stayed under the PSLRA, reasoning that the "discovery sought . . . would be precisely the same as what plaintiffs would seek on the securities violations claims" and allowing discovery "would be an improper end run around the PSRLA"); *Sarantakis v. Gruttadauria*, No. 02 C 1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) (same).

3

at *5 n.7 (N.D. Ill. Mar. 8, 2005).  Here, Plaintiffs seek burdensome merits discovery in order to save claims that otherwise would be dismissed.  Despite previous complaints having named specific non-exchange defendants, Plaintiffs chose to dismiss those defendants *without prejudice* and now seek data from hundreds of trading days over a span of fourteen years.  (*See* Requests for Production, ECF No. 164-1, at Definitions ¶ 6, Requests ¶¶ 1–7.)  The purpose of this discovery is to remedy the obvious deficiency in their complaint: despite filing a complaint spanning 89 pages, and despite having "studied all VIX-relevant SPX Options" and performed various analyses of the data (*see* Compl., ECF No. 140, ¶ 113), Plaintiffs are unable to identify any particular allegedly manipulative market activity in any particular allegedly manipulated settlement.  So rather than asking for data identifying a market participant involved in a particular quote, order, or trade on a specific date, Plaintiffs have requested data from *all settlements* over *fourteen years*.  This is not discovery aimed at identifying specific, known bad actors; it is discovery aimed at identifying *whether bad acts even exist*.

The overreach of Plaintiffs' requests, and their true intent to seek merits discovery, is made plain by Plaintiffs' attempt to obtain Cboe's proprietary algorithm.  At the status hearing, Plaintiffs all but admitted the algorithm was not necessary to identify John Does, calling "[t]he algorithm . . . the least important of the request[s]," but noting that the algorithm was needed to "help [Plaintiffs] in terms of understating the trading patterns."  (*See* Tr. 11/1/18 Hearing, ECF No. 173, at 3:13–17.)  This concession reflects that Plaintiffs know they have not yet identified any patterns that reflect manipulation, and are using discovery in the hope that they might fill the factual gaps in their complaint.

Compliance with Plaintiffs' discovery requests also would be unduly burdensome.  Plaintiffs seek data from hundreds of trading days over a span of fourteen years.  (*See* Requests

4

for Production, ECF No. 164-1, at Definitions ¶ 6, Requests ¶¶ 1–7.) Cboe would have to assemble and organize this large set of data, with the associated time and expense, so that it would be reviewable by Plaintiffs. In addition to the cost of assembling the massive swaths of data that Plaintiffs request, Plaintiffs' proposed discovery would encroach on important confidentiality interests. Plaintiffs seek disclosure of trading information, whose confidentiality is recognized by applicable regulations,[2] as well as Cboe's own policies.[3] This information is confidential for good reason; it contains market participants' trading strategies, the disclosure of which could "potentially expos[e] them to a risk of competitive harm." (Non-Exchange Defs.' Mem., at 4, ECF No. 35.) Making matters worse, Plaintiffs seek data for *all market participants* in SPX options. (*See, e.g.*, Requests for Production, at Requests ¶ 1.) Unless Plaintiffs are alleging that every single market participant was engaged in manipulation, Plaintiffs' discovery requests would require Cboe

---

[2] The Commodity Exchange Act generally prohibits the Commodity Futures Trading Commission from publishing "data and information that would separately disclose the business transactions or market positions of any person and trade secrets or names of customers." 7 U.S.C. § 12(a)(1); *see also id.* § 20(d) (preventing disclosure of same in market reports); 17 C.F.R. § 145.5(c)(1) (allowing the CFTC to withhold "[d]ata and information which would separately disclose the business transactions or market positions of any person and trade secrets or names of customers"). Additionally, the Cboe Exchange's Certificate of Incorporation, approved as a rule change by the Securities and Exchange Commission, provides that "all confidential information pertaining to the self-regulatory function of CBOE . . . contained in the books and records of CBOE [will not be] made available to any persons other that those officers, directors, employees and agents that have a reasonable need to know the contents [and will be] retained in confidence." 75 Fed. Reg. 30082, 30086 (May 28, 2010).

[3] *See, e.g.*, Cboe Futures Exchange, LLC Policies and Procedures Section of Rulebook, at 44 (revised Oct. 8, 2018), http://cfe.cboe.com/publish/cfepolicies/cfepoliciesandprocedures.pdf (requiring the Regulatory Services Division to keep confidential information pertaining to Cboe's regulatory responsibilities, including position data and detailed transaction data); Cboe Futures Exchange, LLC Rulebook, Rule 613 (revised Oct. 8, 2018), http://cfe.cboe.com/publish/cferulebook/cfe-rule-book.pdf (generally providing that "no Trading Privilege Holder (including its Related Parties) shall disclose to any Person any Order placed by any other Person, except to the Exchange or the Commission").

to reveal the identities and confidential information of market participants involved in wholly innocuous trading activity.

Non-exchange defendants have a clear interest in protecting this confidential data, but have been excluded from the case in what this Court has correctly called "a strategic decision to try to get Doe discovery." (Tr. of 11/1/18 Hearing, ECF No. 173, at 9:6–7.) In excluding non-exchange defendants, Plaintiffs have placed the burden solely upon Cboe to advocate for the protection of such confidential data. Allowing Plaintiffs to obtain discovery from non-exchange defendants before non-exchange defendants are even joined would be an impermissible end-run around the PSLRA's automatic stay.[4]

This Court has repeatedly, and correctly, expressed the inclination to reject Plaintiffs' efforts to pursue discovery before a motion to dismiss is adjudicated. (*See* Leadership Council Mem. Order, ECF. No. 120, at 2 ("Because Doe discovery will have significant overlap with merits discovery, . . . I remain inclined to put an amended complaint to the motion-to-dismiss test sooner rather than later."); *see also* Tr. 7/11/2018 Hearing, ECF No. 48, at 14:11–16 ("[I]t will probably make sense to deal with motions to dismiss before Doe discovery. There is probably some benefit to getting some legal theories tested through motions-to-dismiss practice that will then be useful moving forward in streamlining the case and getting a vision for how the case could move forward."); Tr. 5/31/18 Hearing, *Samuel v. Does*, No. 1:18-cv-03190 (N.D. Ill.), ECF. No. 26, at

---

[4] Indeed, even outside of the PSLRA context, courts have rejected overbroad "Doe discovery" requests of the type Plaintiffs seek. *See Guava LLC v. Does 1–5*, No. 1:12-cv-8000, 2013 WL 3270663, at *5 (N.D. Ill. June 27, 2013) (denying request for expedited Doe discovery in part because it would identify non-infringing internet users); *Purzel Video GmbH v. Does 1–161*, No 13 C 2504, 2013 WL 12310084, at *2–3 (N.D. Ill. June 4, 2013) (same); *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 412 (N.D. Ill. 2012) (denying motion for expedited deposition to identify Doe defendants in part because the deposition would include merits discovery, which could unduly prejudice defendants).

6

20:17 (granting motion to quash early discovery); Tr. 4/5/2018 Hearing, *Atlantic Trading U.S.A., L.L.C. v. Does 1–100*, No. 1:18-cv-01754, ECF No. 20, at 13:1–2 (same).) The Court should adhere to its previously stated approach.

### B. Plaintiffs Have Not Met Their Burden to Show that the PSLRA Stay Should Be Lifted Under the Terms of the Statute.

Plaintiffs contend that their discovery requests fall within the automatic stay's exception for "particularized discovery" that "is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). That is incorrect. The mandatory PSLRA stay may be lifted only in "exceptional circumstances," *Sarantakis*, 2002 WL 1803750, at *2. None are present here. Plaintiffs' requests are not "particularized," and they are not necessary to "preserve evidence" or "prevent undue prejudice" within the meaning of the PSLRA.

*First*, Plaintiffs' requests are not "particularized." *In re China Education Alliance, Inc. Securities Litigation*, No. CV 10-9239 CAS, 2011 WL 3715969, at *4 (C.D. Cal. Aug. 22, 2011), cited by Plaintiffs, offers an example of "particularized" discovery: the movants asked the court only to allow discovery of unserved defendants' addresses. In a stark contrast, it is difficult to imagine discovery requests less "particularized" than the discovery requests Plaintiffs have served. They seek data from hundreds of trading days over a span of fourteen years with the apparent goal of mining that data to determine whether manipulation might have occurred over any of those days. Such discovery requests are plainly inconsistent with the PSLRA's limited exception to the automatic stay for "particularized" discovery.[5]

---

[5] Plaintiffs' cited cases offer them no support because the discovery requests in those cases were much narrower than Plaintiffs' requests. In *Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*, Plaintiffs requested "a relatively-limited amount of materials, *all of which ha[d] been produced*" in other proceedings and were "accordingly subject to readily definable constraints." 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013) (emphasis added). And in *Koncelik v. Savient Pharmaceuticals, Inc.*, Plaintiffs requested "only the preservation of

*Second*, Plaintiffs have not shown that their discovery requests are "necessary to preserve evidence." "A party alleging that discovery is 'necessary to preserve evidence' must present more than mere 'generalizations of fading memories and allegations of possible loss or destruction.' . . . The movant is required to make a specific showing that 'the loss of evidence is imminent as opposed to merely speculative.'" *Sarantakis*, 2002 WL 1803750, at *2. Otherwise, "[t]he kind of general concerns plaintiffs express about document destruction . . . would arise any time discovery in a case is stayed for a period of time. To lift the PSLRA stay based on such generalized concerns would open a loophole in the stay that would undermine the statutory scheme enacted by Congress." *See Selbst v. McDonald's Corp.*, No. 04 C 2422, 2006 WL 566450, at *3 (N.D. Ill. Mar. 1, 2006). Plaintiffs here have made no showing of imminent spoliation. Plaintiffs have alleged only that "the passage of time . . . presents the risk that the unidentified Doe Defendants may fail to preserve key evidence." (*See* Mot. at 5, 12.) Such allegations, which could be made in literally every case, are insufficient to overcome the PSLRA's mandatory stay. Indeed, even outside the PSLRA context, they would be insufficient to establish a basis for early discovery. *See Guava*, 2013 WL 3270663, at *5 (denying expedited Doe discovery where Plaintiff had not supported spoliation concerns with specific evidence).

Further, the existence of rules and regulations that require market participants to retain records shows that Plaintiffs' purported spoliation concerns are nothing more than speculation.[6]

---

documents, not the documents' actual production." No. 08 Civ. 10262(GEL), 2009 WL 2448029, at *1 (S.D.N.Y. Aug. 10, 2009).

[6] *See* 17 C.F.R. § 1.31 (requiring "books and records required to be kept by the [Commodity Exchange] Act" generally to be kept "for a period of not less than five years from the date on which the record was created"); 17 C.F.R. § 240.17a-4 (imposing three- and six-year record-keeping requirements under Securities Exchange Act); *see also* Cboe Futures Exchange, LLC Rulebook, Rule 502 (revised Oct. 8, 2018), http://cfe.cboe.com/publish/cferulebook/cfe-rule-book.pdf ("Each Trading Privilege Holder and Clearing Member shall keep all books and records

8

*See Sarantakis*, 2002 WL 1803750, at *3 ("[L]ifting the stay is not necessary to preserve evidence when . . . the party from whom discovery is sought . . . will maintain the evidence at issue."). And if Plaintiffs are actually concerned about spoliation, their own actions do not show it; as of October 23, 2018, Plaintiffs had failed to send preservation letters even to previously identified non-exchange defendants. Moreover, Plaintiffs offer no basis for the counterintuitive suggestion that John Does would have preserved evidence for the last several months following the filing of class complaints, only to destroy it during the pendency of the motion to dismiss.

*Third*, Plaintiffs have failed to show that they face "undue prejudice" unless the PSLRA stay is lifted. Plaintiffs argue that they could be unduly prejudiced by expiration of the applicable statutes of limitations if the PSLRA stay were not lifted. (Mot. at 4–5, 11–12.) In other words, Plaintiffs realize that they are unable to file a complaint that can withstand a motion to dismiss before the statute of limitations expires, and therefore seek discovery in hopes that they can somehow remedy the defects in the complaint as currently drafted. But prejudice caused by the delay inherent in the PSLRA stay cannot constitute "undue prejudice." *See Sarantakis*, 2002 WL 1803750, at *2 ("Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper nor unfair."). Thus, courts have declined to find "undue prejudice" even where the moving party has raised a statute-of-limitations argument. *See, e.g.*, *In re Rambus, Inc. Sec. Litig.*, No. C 06-4346 JF (HRL), 2007 WL 1430047, at *2 (N.D. Cal. May 14, 2007) (denying motion to lift PSLRA stay despite statute-of-limitations argument); *cf. SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of Cal.*, 189 F.3d

---

required to be kept by it pursuant to the Rules of the Exchange for a period of five years from the date on which they are first prepared . . . ."); Rules of Cboe Exchange, Inc., Rules 15.1, 15.1.01 (revised Nov. 7, 2018), https://www.cboe.com/publish/cboe-rules/cboe-exchange-inc-rule-book.pdf (listing exchange rules with preservation requirements).

909, 912 (9th Cir. 1999) ("[A]s a matter of law, failure to muster facts sufficient to meet the Act's pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay under § 78u–4(b)(3)(B).").[7]

Further, Plaintiffs are not acting as if they are actually concerned about the statute of limitations expiring. If they were genuinely concerned, they would have named specific market participants, just as several of the originally filed class-action complaints did. Plaintiffs state that they "attempted to enter into tolling agreements with all trader defendants named in any of the MDL proceedings in order to alleviate the statute of limitations issue" but "[a]ll of those defendants, except one, refused to do so." (Mot. at 4 n.2.) One would expect that any plaintiff, faced with a bona fide concern that the statute of limitations would expire and a defendant who refused to sign a tolling agreement, would sue that defendant. They would not name a "John Doe" and move for discovery, to identify defendants they have already identified, in the face of a statute specifically designed to prevent such discovery. Plaintiffs state in a footnote that co-Lead counsel did not name any non-Cboe defendants in their own complaints, and "[t]he fact that *other* counsel saw fit to name traders for various reasons—in complaints that they knew would never be tested by a motion to dismiss due to the consolidation process—is irrelevant." (Joint Status Report, ECF 161, at 5 n.2 (emphasis in original).) It clearly is relevant—lawyers have the ethical duty under

---

[7] Plaintiffs' cited cases are of no help to them. In *In re Odyssey Healthcare, Inc. Securities Litigation*, No. CIV.A.3:04-CV-0844-N, 2005 WL 1539229 (N.D. Tex. June 10, 2005), the court *denied* Plaintiffs' requests to lift the PSLRA stay despite the fact that Plaintiffs argued that delaying the production could prejudice them due to expiration of the applicable statute of limitations. *Id.* at *1–2. And in both *Hufnagle v. Rino International Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 2650755 (C.D. Cal. July 6, 2011) and *In re China Education Alliance*, 2011 WL 3715969, at *4, narrow discovery of defendants' service addresses was allowed only because there was no risk that the plaintiff would "find during discovery some sustainable claim not alleged in the complaint." *Hufnagle*, 2011 WL 2650755 at *1–2. Here, Plaintiffs *admit* that part of the reason they are seeking expedited discovery is to state a claim against non-exchange defendants. (*See* Mot. at 4.)

Rule 11 to put accurate information in the complaint, regardless of whether they predict that the complaint will be later tested in a motion to dismiss. Moreover, steering committee member Hausfeld LLP, (ECF No. 119 at 2), was one of the counsel who named numerous non-exchange defendants in its original complaint. *Siegel v. Cboe Exchange, Inc., et al.*, No. 1:18-cv-03021, ECF. No. 1.

It appears that Plaintiffs may have strategically declined to name specific defendants in order to obtain early merits discovery, perhaps by leveraging their claim that allegedly expiring statutes of limitations pose a purported emergency. This tactic is not grounds for lifting the automatic stay.

Indeed, Plaintiffs' other actions suggest that they are not actually concerned about any statutes of limitations expiring. For example, the Court's scheduling order provided Plaintiffs approximately 45 days to respond to Cboe's motion to dismiss (ECF No. 162), but Plaintiffs are free to ask to file their response brief as quickly as they wish in order to mitigate any statute-of-limitations (or spoliation) concerns. Plaintiffs have not indicated to the Court that they will do so. Plaintiffs even requested an additional week to reply to this brief. (Tr. 11/1/2018 Hearing, ECF No. 173, at 14:4–5.) In short, Plaintiffs are not acting like litigants who feel an actual sense of urgency, and have therefore shown no basis to override the PSLRA.

This Court previously denied Plaintiffs' early discovery requests based on a lack of good cause, even without applying the PSLRA's more stringent standard. Tr. 4/5/2018 Hearing, *Atlantic Trading U.S.A., L.L.C. v. Does 1–100*, No. 1:18-cv-01754, ECF No. 20, at 13:7–18 ("I conclude . . . that there isn't good cause right now for early discovery . . . . Early discovery is in and of itself an exception to the rules. . . . I am not convinced that there is the kind of urgency to identify the defendants such that this subpoena needs to issue right now while there are good reasons to wait

11

to see what will happen . . . and potential efficiencies down the road . . . ."); *see also* Tr. 5/31/18 Hearing, *Samuel v. Does*, No. 1:18-cv-03190 (N.D. Ill.), ECF. No. 26, at 20:17–25 (granting motion to quash and noting that "the delay that is caused by quashing the subpoena now is one that is not, in my view, unfair to the plaintiffs"). Nothing has changed that would warrant reconsideration.

## II. Discovery of the Type Sought by Plaintiffs Might Never Be Required.

The Court, in discussing Plaintiffs' request, stated that discovery of the type sought by Plaintiffs is "likely to happen at some point, even if Cboe were to prevail on a forthcoming motion to dismiss," because Cboe could be "a third party to a potential discovery request down the road." (Tr. 11/1/18 Hearing, ECF No. 173, at 4:15–21.) Respectfully, it is not inevitable that Plaintiffs will be entitled to discovery of the type sought.

Both Cboe and non-exchange defendants, whether previously named or Doe defendants, may prevail on motions to dismiss before any discovery is necessary. If Cboe prevails on its motion to dismiss, Plaintiffs might name previously identified non-exchange defendants and other market participants in a new complaint. Those defendants also would be entitled to a PSLRA discovery stay, and could succeed on a motion to dismiss that alleviates the need for Doe discovery. *See Quezada v. Gricewich*, No. 1:06-cv-01088-OWW-SKO PC, 2010 WL 3184480, at *1 (E.D. Cal. Aug. 11, 2010) (denying early Doe discovery where motions to dismiss "may render the issue moot"); *cf. LaNeave v. United States*, No. CIV A 3:05-CV-329, 2006 WL 4589343, at *1 n.1 (E.D. Va. May 8, 2006) (denying request as moot after recommending motions to dismiss be granted). Alternatively, even if either of those motions to dismiss is denied, the Court's denial order might narrow the scope of the case—and therefore narrow the breadth of discovery Plaintiffs could pursue.

12

In any event, regardless of whether some discovery ultimately will occur, the PSLRA expresses Congress's preference that motions to dismiss should be adjudicated before discovery proceeds. The exception to the automatic stay applies only in narrow circumstances, which are not present here. The Court should therefore deny Plaintiffs' request for early discovery.

Dated: November 16, 2018                    Respectfully submitted,

                                                              /s/ Reid J. Schar

Reid J. Schar
Gregory M. Boyle
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
rschar@jenner.com
gboyle@jenner.com

*Counsel for Cboe Global Markets, Inc., Cboe Futures Exchange, LLC, and Cboe Exchange, Inc.*

## **CERTIFICATE OF SERVICE**

I, Reid J. Schar, hereby certify that on November 16, 2018, I electronically filed the foregoing **Memorandum in Opposition to Plaintiffs' Motion for Expedited Discovery** using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of record.

/s/ Reid J. Schar

*Counsel for Cboe Global Markets, Inc., Cboe Futures Exchange, LLC, and Cboe Exchange, Inc.*