**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION <br><br> and <br><br> LJM PARTNERS, LTD., <br><br>        Plaintiff, <br><br>  v. <br><br> JOHN DOES, <br><br>        Defendants. | Case No. 1:18-cv-004171 <br> MDL No. 2842 <br><br> and <br><br> Case No. 1:19-cv-00386 <br><br> Honorable Manish S. Shah |

**CBOE'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

Cboe Global Markets, Inc., Cboe Futures Exchange, LLC, and Cboe Exchange, Inc. (collectively "Cboe"), respectfully submit this memorandum in opposition to Plaintiff LJM Partners' motion for expedited discovery (No. 1:18-cv-004171 ("MDL"), Dkt. 253 ("Mot.")).

**INTRODUCTION**

Plaintiff LJM Partners, Inc. ("LJM Partners") claims that the discovery it seeks from Cboe is sought "to determine the identity of John Does." (Mot. at 1.) But that is not the case. What LJM Partners is truly seeking is merits discovery, to develop its claims. LJM Partners cannot establish "good cause" to warrant expedited discovery under those circumstances.

In a typical case involving a request for "Doe discovery," the plaintiff alleges a specific instance of wrongdoing, and seeks targeted discovery to determine the wrongdoer's name. For instance, a plaintiff might allege that he was mistreated by a police officer, and seek discovery to determine the name of the police officer on duty that day. A plaintiff might learn that an Internet

user with a particular IP address committed copyright infringement, and therefore may serve a subpoena to determine the name of the individual who was using that IP address. Or a plaintiff might allege that a particular quote, order, or trade was improper, and seek targeted discovery to determine the identity of the market participant who placed the quote or order that may have resulted in a trade.

That is not the type of discovery LJM Partners pursues here. LJM Partners is not pursuing discovery to determine who placed particular quotes or orders that may have resulted in a trade. Nor does LJM Partners' complaint allege that particular quotes, orders, or trades were tainted by wrongdoing. Rather, although LJM Partners alleges manipulation only during two particular days, LJM Partners' proposed discovery seeks voluminous market data for SPX Options over an eleven-day period, necessarily implicates the confidential market data of market actors involved in wholly innocuous activity, and goes well beyond what would be necessary to determine the identity of any specific market participant who placed a particular purportedly suspicious quote or order that may have resulted in a trade.

LJM Partners already knows this. LJM Partners' counsel has been involved in a similar action pending in this district, *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation*, No. 18-cv-04171 (N.D. Ill.) (the "MDL"), in which plaintiffs sought strikingly similar expedited discovery. The court denied that motion, holding that the discovery requested was "ultimately merits discovery or at least too entwined with merits discovery." (MDL, 1/11/19 Hearing Tr., Dkt. 195 at 18:6–11.)

Subsequently, LJM Partners brought its own motion for strikingly similar expedited discovery, which this Court denied when *LJM Partners* was consolidated into the MDL as a tag-along action. (*See* MDL, Dkt. 217.) LJM Partners now renews its motion. But for the same

reasons expedited discovery was denied in both prior instances, it should be denied again. LJM Partners has not met its burden to show "good cause" for expedited discovery, and allowing expedited discovery risks undermining the Private Securities Litigation Reform Act ("PSLRA") stay in effect in the MDL case. Accordingly, this Court should deny LJM Partners' motion.

## BACKGROUND

The MDL action is the result of the consolidation of 26 similar cases pursuant to a June 2018 ruling by the United States Judicial Panel on Multidistrict Litigation. (MDL, Dkt. 1.) LJM Partners' counsel, Korein Tillery LLC, filed two of those initial 26 actions: *Tomasulo v. Cboe Exchange, Inc., et al.*, No. 1:18-cv-02025 (N.D. Ill.); and *Breakwater Trading LLC v. Cboe Exchange, Inc., et al.*, No. 1:18-cv-05023 (N.D. Ill.). Korein Tilery LLC was not appointed to the leadership committee in the MDL Action (MDL, Dkt. 119) and voluntarily dismissed those actions, but maintains an appearance in the MDL.

Plaintiffs in the MDL filed a motion for expedited discovery in October 2018. (MDL, Dkt. 164.) MDL plaintiffs' proposed document requests, though described as John Doe discovery, sought documents sufficient to identify all trades and quotes for SPX Options that were included or considered for inclusion in the calculation of the VIX settlement, and for all underlying parties identified, information about their outstanding positions with respect to expiring VIX Options or Futures. (MDL, Dkt. 164-1.)

This Court denied the plaintiffs' motion for expedited discovery in January 2019. (MDL, Dkt. 196.) The court reasoned, correctly, that the plaintiffs' discovery requests were not John Doe discovery at all, but "ultimately merits discovery" designed not to identify market actors, but to develop the claims in plaintiffs' complaint. (MDL, 1/11/19 Hearing Tr., Dkt. 195 at 18:6–11.) The Court explained, "This isn't a situation where it's as simple as replacing the Doe with a name

3

that can be gleaned from specific trading data. It's the situation where some data, analysis, investigation, and application of analysis and investigation to data would need to be done in order to identify the Does, and all of that is significantly overlapping with the ultimate notion of whether there is or isn't manipulation going on by the Does." (*Id.* at 18:12–21.) As a result, the Court held that the PSLRA prohibited the court from ordering early discovery. (*Id.*)

LJM Partners filed its initial complaint soon thereafter, and immediately sought expedited discovery. (*LJM Partners, Ltd. v. John Does*, 1:19-cv-00368 (N.D. Ill.) ("*LJM Partners*"), Dkts. 1, 7.) LJM Partners' proposed discovery copied the language of the MDL proposed discovery almost exactly, but sought trades and quotes underlying the "VIX Index calculation," instead of the data underlying calculation of the settlement. (*Compare* MDL, Dkt. 164-1 Requests 1–3, 7, *with LJM Partners*, Dkt. 7-1 Requests 1–3, 5.) Due to the similarities between the *LJM Partners* and MDL complaints, *LJM Partners* was ultimately transferred to this Court. (MDL, Dkt. 207.)

This Court denied LJM Partners' request for expedited discovery on February 12, 2019. (*LJM Partners*, Dkt. 18.) The Court explained that it was concerned that allowing expedited discovery would signal to prospective plaintiffs that they could avoid coordination with the MDL by filing related cases. (*LJM Partners*, 2/12/19 Hearing Tr., Dkt. 19, at 2:10–17.) Thus, the Court denied the expedited discovery motion based on its "real concern . . . for costs on the judicial system to authorizing that kind of early discovery." (*Id.* at 7:24–25.) In consolidating *LJM Partners* with the MDL, the Court ruled that "discovery w[ould] not be permitted in [*LJM Partners*] until [it] conclude[d] that Doe discovery in the class action [wa]s appropriate" because "[t]he expected efficiency gained by coordination of the class action and *LJM Partners* justifie[d] the denial of early discovery in *LJM Partners*." (MDL, Dkt. 217.)

4

This Court has since granted a motion to dismiss the MDL plaintiffs' complaint. (MDL, Dkt. 245.) LJM Partners now renews its motion for expedited discovery, proposing identical discovery to what it sought in January 2019. (*Compare* Mot. Ex. A, *with LJM Partners*, Dkt. 7-1.) This Court should deny LJM Partners' motion.

## ARGUMENT

### I. This Court Should Deny the Motion to Expedite Discovery for All the Same Reasons It Denied the Requests Made by LJM Partners and MDL Plaintiffs Earlier this Year.

In January, the Court denied MDL plaintiffs' motion for expedited discovery because it was "ultimately merits discovery or at least too entwined with merits discovery." (MDL, 1/11/19 Hearing Tr., Dkt. 195 at 18:6–11.) In February, the Court denied LJM Partners' first motion for expedited discovery for two additional reasons: to promote judicial efficiency, and avoid encouraging additional cases filed to avoid coordination with the MDL. (*See LJM Partners*, 2/12/19 Hearing Tr., Dkt. 19, at 2:10–17; 7:24–25.) For those same reasons, this Court should deny LJM Partners' motion again. LJM Partners contends that the Court should reconsider its prior order in view of the possible expiration of the statute of limitations next year. But the statute of limitations is a red herring that does not justify expediting the broad merits-oriented discovery that LJM Partners seeks, just as the Court held in rejecting the substantially similar expedited discovery MDL plaintiffs sought to issue. (*See* MDL, 1/11/19 Hearing Tr., Dkt. 195 at 18:6–21.)

#### A. LJM Partners Seeks Improper Merits Discovery that Is Not Justified by the Possible Expiration of the Statute of Limitations.

LJM Partners contends that the Court should revisit its prior decision denying expedited discovery because the potential expiration of a statute of limitations would be "good cause" for expedited discovery. According to LJM Partners, the limitations clock will continue to run until LJM Partners files an amended complaint identifying the defendants. Thus, LJM Partners asserts

5

that it needs discovery now, before the statute of limitations expires, in order to determine the identity of those defendants.

LJM Partners' argument is a red herring because it proposes to serve merits discovery, not the type of expedited Doe discovery that some courts have allowed. Courts do not allow expedited discovery where, as here, it is discovery designed to help a plaintiff develop its claims. *See, e.g.*, *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 412 (N.D. Ill. 2012) (denying motion for expedited discovery to identify Doe defendants in part because the deposition would include merits discovery, which could unduly prejudice defendants); *Butera & Andrews v. Int'l Bus. Machs. Corp.*, 456 F. Supp. 2d 104, 114 (D.D.C. 2006) (rejecting expedited discovery because "[f]undamental fairness commands that '[c]ounsel should not be allowed to file a complaint first and thereafter endeavor to develop a cause of action'").

Here, LJM Partners' discovery requests, like those the MDL plaintiffs proposed, are extremely broad and seek much more than the identity of the defendants. (*See* MDL, 1/11/19 Hearing Tr., Dkt. 195 at 18:6–21 (MDL plaintiffs' similar discovery requests were "ultimately merits discovery or at least . . . entwined with merits discovery").) LJM Partners does not seek information focused on any particular purportedly suspicious quotes, orders or trades. Instead, it asks for information regarding *all* trades and *all* quotes that were either included in, or considered for inclusion in, *all* VIX Index calculations during an *eleven-day* period that is much longer than the two days on which they allege manipulation occurred.[1] This is an enormous amount of data:

---

[1] LJM Partners' Request 1 for information regarding "all trades of SPX Options that were included in any VIX Index calculation" is nonsensical because the VIX Index calculation uses *quotes* not *trades*. *See Cboe Volatility Index® (VIX® Index®) FAQs*, Cboe Global Markets, Inc. (Apr. 14, 2016), http://www.cboe.com/products/vix-index-volatility/vix-options-and-futures/vix-index/vix-faqs#16 ("[T]he intraday (or spot) value of the VIX Index is calculated **using the midpoint of bid/ask quotes of SPX options** . . ." (emphasis in original).); *see also White Paper: Cboe Volatility Index*, Cboe Exchange, Inc. (2019), https://www.cboe.com/micro/vix/vixwhite.pdf, at 15

SPX Options trade each business day for approximately 12 hours during regular and extended trading hours. The VIX Index is calculated approximately every 15 seconds, and for each of those calculations, there could be inputs from hundreds of SPX Options series from two different expirations. LJM Partners is thus asking for thousands—if not millions—of data points.

And with respect to *each* quote, LJM Partners seeks not only the identity of the market participant who submitted the quote, but also information that has nothing to do with determining the identity of a possible Doe defendant: "(b) bid or ask status; (c) bid or ask price and volume; (d) strike price; (e) trade date and settlement date; (f) time; (g) option type (call/put); . . . and (i) whether the quote was executed as a trade. " (Mot. Ex. A at Request 2; *see also id.* Request 4.)

The purpose of obtaining all of this information appears to be the hope of filing an amended complaint containing more detailed allegations of purported manipulation that might improve LJM Partners' odds of surviving a motion to dismiss. (*See* MDL, 1/11/19 Hearing Tr., Dkt. 195 at 18:12–21 (Court finding that substantially similar MTD plaintiff discovery requested information "that is significantly overlapping with the ultimate notion of whether there is or isn't manipulation going on by the Does.") This is merits discovery, not Doe discovery. Indeed, LJM Partners has admitted as much. Just last week, when responding to the Court's questioning of why it needed eleven days of data, LJM Partners stated: "we need . . . comparator information for how trading was happening on normal days . . . so that when we can look at February 5th and 6th, *we can determine whether or not there was anomalous trading happening during that period of time*." (MDL, 6/25/19 Hearing Tr., Dkt. 258, at 11:22–12:2 (emphasis added).) This concession should end the debate: LJM Partners does not know whether any improper trading occurred on February

---

(including column reflecting that the midpoint of the bid and ask quotes is the constituent value). Thus, Cboe will focus this brief on LJM Partners' requests for quote information.

5th and 6th and, therefore, has to a certainty not properly alleged improper conduct in its complaint. Rather, as it admitted last week, what is seeks through this discovery request is not discovery targeted at determining the identity of wrongdoers, but rather discovery targeted at determining whether there was any wrongdoing at all.

      LJM Partners' fifth proposed discovery request establishes beyond doubt that LJM Partners is seeking merits discovery rather than Doe discovery. That discovery request seeks information regarding the "outstanding positions in respect of SPX Options, VIX Options and VIX Futures" for "any Persons identified" by the preceding requests. (Mot. Ex. A at Request 5.) The very premise of this discovery request is that LJM Partners is *not* seeking the names of particular persons, but instead is seeking information about persons who already will have been identified in previous requests. For those persons who already have been identified, LJM Partners further seeks to find out the positions they held in SPX Options and *other* derivatives. LJM Partners seeks an extraordinary amount of information about an undifferentiated group of market participants—*all* positions held by *all* market participants who submitted quotes over an eleven-day period. And this information is relevant only to possible financial *motives* for manipulation—not the identity of the manipulators. This is a paradigmatic fishing expedition.

      The reason LJM Partners is seeking this discovery presumably is that it does not yet have an answer to the Court's pointed question: "[D]o you have a theory as to why, for this particular otherwise nonremarkable downturn in the S&P 500, someone decided to try to manipulate the VIX, as opposed to the other times, as you've identified in your complaint . . . ?" (MDL, 6/25/19 Hearing Tr, Dkt. 258, at 15:11–17.) LJM Partners undoubtedly believes it needs merits discovery to develop such a theory in order to survive a motion to dismiss. But it is a fundamental principle that a party should not be allowed to file a complaint and thereafter seek to develop a cause of

8

action through discovery: The Court should not allow LJM Partners to use the cover of purported Doe discovery to obtain merits discovery in an effort to fix a complaint that is necessarily deficient because LJM Partners concedes that it does not know if SPX Options trading on February 5 and 6 was *anomalous*, let alone *manipulative.*

### B. A Stay Will Promote Judicial Efficiency and Avoid the Filing of New Cases.

Because LJM Partners is not seeking Doe discovery, the question before the Court is whether LJM Partners has a basis for expedited merits discovery. As this Court has already held, the answer is no. Contrary to LJM Partners' contention, early discovery would not "clarify the issues" and serve as a "template and precedent" for any later discovery in the MDL action (Mot. at 13), but would instead lead to duplication and inefficiency.

*LJM Partners* has been consolidated into the MDL as a tag-along action, and as such, this Court should coordinate discovery between LJM Partners and MDL plaintiffs. LJM Partners' proposed discovery requests are substantially similar to the MDL plaintiffs' requests: both sets of requests seek data that could reveal market actors' confidential quoting and trading strategies across various markets. Although LJM Partners' discovery requests are limited to a particular time period that differs from the time period at issue in the MDL plaintiffs' discovery requests, the two sets of discovery requests will likely precipitate similar discovery disputes over relevance, burden, and confidentiality. This is especially likely given that the same markets—SPX Options and VIX derivatives—and some of the same market actors—market makers—are put at issue in both discovery requests. Because the MDL plaintiffs will doubtless argue that they are not bound by the outcome of discovery disputes in which they were not parties, the Court will have to resolve the same discovery disputes twice. At best this will lead to inefficiency, and at worst it could lead to inconsistent discovery rulings—and such inconsistency would be the antithesis of what MDL treatment is meant to achieve.

Alternatively, LJM Partners proposes that it and MDL plaintiffs coordinate discovery requests together now, with the MDL plaintiffs receiving documents based on their discovery requests only after the PSLRA stay has lapsed. (Mot. at 13–14.) Again, this argument is no more persuasive than it was when LJM Partners filed their initial motion. Now, as before, LJM Partners' argument presupposes that MDL plaintiffs will eventually receive discovery—which they may not. Their first complaint was dismissed (MDL, Dkt. 245), and their second attempt may fare no better. It would not make sense to authorize voluminous MDL discovery to be served on Cboe now—which would undoubtedly seek information over a much longer time span—for a PSLRA-stayed case in which discovery may never become necessary.

Nor should the Court grant expedited discovery based on LJM Partners' asserted concerns that it would be inefficient to decide legal issues related to the statute of limitations. It may be that allowing improper merits discovery would have the effect of mooting Doe defendants' statute-of-limitations defenses and thereby obviating the need of deciding disputed issues of law. But the Court should reject any suggestion that it is desirable to avoid adjudicating potentially meritorious defenses by allowing improper discovery.[2]

Further, as this Court has articulated, there is a real concern that if expedited discovery is allowed here, new plaintiffs will file related cases in an attempt to avoid coordination with the MDL and/or the effects of the PSLRA stay. (*See LJM Partners*, 2/12/19 Hearing Tr., Dkt. 19, at 2:10–17.) LJM Partners argues that this is not a legitimate concern because no tag-along actions have been filed in the last few months. (Mot. at 12–13.) But that very well may be *because* of the Court's decision to deny LJM Partners' first motion for expedited discovery and coordinate *LJM*

---

[2] It is unlikely any future defendants would agree with LJM Partners' assertions that they would be better off losing their statute of limitations defenses so as to avoid the "cloud of uncertainty regarding their business liability." (*See* Mot. at 12.)

*Partners* with the MDL. If the Court were to allow expedited discovery now, it would face the same risks it did in February that prospective plaintiffs would be incentivized to file new actions in the hopes of avoiding coordination and, indeed, the precedent would have been set that such discovery can proceed.

**II.     Expedited Discovery Would Prejudice Cboe.**

Not only would ordering expedited discovery be inefficient and have the potential to trigger follow-on complaints, but it would unfairly prejudice Cboe. It would subject Cboe to broad discovery requests and risk undermining the PSLRA discovery stay currently in effect in the MDL Action.

### A. LJM Partners' Discovery Requests Are Not Narrowly Tailored or Proportional to Their Purported Need to Identify John Does.

As discussed above, LJM Partners' proposed discovery goes far beyond what could conceivably be necessary to identify market participants responsible for market activity that LJM Partners believes was manipulative. And, as noted above, the data requested are voluminous. Cboe would have to assemble, organize, and conduct independent analyses on these data, with the associated time and expense, to produce the data requested by LJM Partners. Cboe should not be subject to the task of responding to such overbroad merits discovery at this time.

In addition to the cost of assembling the swaths of data that LJM Partners requests, LJM Partners' proposed discovery would encroach on important confidentiality interests. LJM Partners seek disclosure of market information, whose confidentiality is recognized by applicable

regulations,[3] as well as Cboe's own policies.[4] This information is confidential for good reason; it contains market participants' trading strategies, the disclosure of which could "potentially expos[e] them to a risk of competitive harm." (MDL, Dkt. 35, at 4.) And in the context of Request 5, which seeks information concerning Does' outstanding positions in SPX Options and other derivatives, LJM Partners' discovery requests would require Cboe to reveal information for market participants in various products, potentially exposing complex strategies that put market participants at real risk of having their proprietary trading strategies revealed to plaintiffs and experts who could be competitors.

Making matters worse, Plaintiff seeks data for *all market participants* in SPX Options. (*See, e.g.*, Mot. Ex. A at Request 2.) The data sought would require Cboe to identify scores of market actors who, by LJM Partners' own view, are involved in wholly innocuous trading activity. Courts in this district have denied requests for expedited discovery that would be similarly over-

---

[3] The Commodity Exchange Act generally prohibits the Commodity Futures Trading Commission from publishing "data and information that would separately disclose the business transactions or market positions of any person and trade secrets or names of customers." 7 U.S.C. § 12(a)(1); *see also id.* § 20(d) (preventing disclosure of same in market reports); 17 C.F.R. § 145.5(c)(1) (allowing the CFTC to withhold "[d]ata and information which would separately disclose the business transactions or market positions of any person and trade secrets or names of customers"). Additionally, the Cboe Exchange's Certificate of Incorporation, approved as a rule change by the Securities and Exchange Commission, provides that "all confidential information pertaining to the self-regulatory function of CBOE . . . contained in the books and records of CBOE [will not be] made available to any persons other that those officers, directors, employees and agents . . . that have a reasonable need to know the contents [and will be] retained in confidence." 75 Fed. Reg. 30082, 30086 (May 28, 2010).

[4] *See, e.g.*, Cboe Futures Exchange, LLC Policies and Procedures Section of Rulebook, at 44 (revised July 2, 2019), http://cfe.cboe.com/publish/cfepolicies/cfepoliciesandprocedures.pdf (requiring the Regulatory Services Division to keep confidential information pertaining to Cboe's regulatory responsibilities, including position data and detailed transaction data); Cboe Futures Exchange, LLC Rulebook, Rule 613 (revised July 2, 2019), http://cfe.cboe.com/publish/cferulebook/cfe-rule-book.pdf (generally providing that "no Trading Privilege Holder, Related Party or Market Participant shall disclose to any Person any Order placed by any other Person, except to the Exchange or the Commission").

inclusive. *See Purzel Video GmbH v. Does 1–161*, No 13 C 2504, 2013 WL 12310084, at *2 (N.D. Ill. June 4, 2013) (denying request for expedited Doe discovery in part because it would identify non-infringing internet users); *Guava LLC v. Does 1–5*, No. 1:12-cv-8000, 2013 WL 3270663, at *5 (N.D. Ill. June 27, 2013) (same).[5]

## B. Permitting Early Discovery Risks Undermining the Automatic Stay.

LJM Partners' expedited discovery motion also should be denied because it risks undermining the stay of discovery in the MDL Action, causing prejudice to Cboe.

Cboe has significant concerns here that LJM Partners' request for early discovery will have the effect of undermining the PSLRA stay that is in place. LJM Partners' requested discovery has a direct connection to the MDL action, as both LJM Partners and MDL plaintiffs are looking for information regarding the activity of the market makers in SPX Options and the positions those market makers held in other derivatives. If discovery were allowed here, this information could be obtained by MDL plaintiffs prior to disposition of a motion to dismiss—effectively serving as an end run around the PSLRA stay. LJM Partners argues that the Court could issue a protective order "preventing LJM and its counsel from sharing any documents produced through Doe discovery with the MDL plaintiffs." (Mot. at 14.) But, as noted above, counsel for LJM Partners maintains an appearance in the MDL. Further, the ultimate purpose of LJM Partners' proposed

---

[5] If the Court is inclined to give LJM Partners some "Doe discovery" so as to obviate LJM Partners' purported statute-of-limitations concerns, then it should deny this motion without prejudice. LJM Partners can attempt to come forward with allegations of particular instances of purported manipulation that are missing only the name of an unknown alleged wrongdoer, and then craft genuine "Doe discovery"—*i.e.*, discovery limited to what is necessary to identify particular alleged wrongdoers. Namely, LJM Partners could identify the particular SPX Options quoting activity it believes purportedly manipulated the VIX Index and allegedly caused LJM Partners to lose money in non-VIX derivatives listed at another exchange, and ask for the identities of the specific participants involved in that activity. The Court should not, however, grant LJM Partners' impermissibly broad discovery requests based on LJM Partners' fig-leaf argument based on the statute of limitations.

discovery would be to obtain information for a publicly filed amended complaint in which LJM Partners expects to name John Does and describe their market activity and positions in VIX derivatives. Thus, MDL plaintiffs would get the benefit of the initial discovery, whether or not they were able to see the underlying documents.

Notably, to prevent circumvention of the PSLRA stay, Congress vested federal courts with the authority to "stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph." 15 U.S.C. § 78u-4(b)(3)(D). This statute prevents plaintiffs from filing a parallel suit to obtain discovery they could not otherwise obtain in federal court. H.R. Rep. No. 104-369, at 31 (1995) (Conf. Rep.) (noting that PSLRA's purpose is to curb "the routine filing of lawsuits . . . with only faint hope that the discovery process might lead eventually to some plausible cause of action"). If courts may take the more intrusive step of staying discovery in a *state* court to avoid undermining the PSLRA stay, they surely may take the less intrusive step of staying discovery in their *own* court for the same reason. Other courts have, in analogous circumstances, stayed discovery of parallel, non-PSLRA lawsuits so as to prevent plaintiffs from "shar[ing] the fruits of their discovery with the [s]ecurities plaintiffs, [thereby] render[ing] the PSLRA's stay provision a nullity." *See Leal v. Paramount Rests. Grp., Inc.*, No. 12-CV-03335-MSK-MEH, 2013 WL 500447, at *4 (D. Colo. Feb. 11, 2013) (halting discovery in related federal ERISA case during pendency of motion to dismiss in PSLRA case); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 CIV.8853 (SWK), 2003 WL 22227945, at *3 (S.D.N.Y. Sept. 26, 2003) (same). The same course is warranted here.[6]

---

[6] At a minimum, the Court should ensure that LJM Partners does not obtain discovery until after the amended complaint in the MDL Action is filed.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for expedited discovery.

Dated: July 2, 2019

Respectfully submitted,

/s/      Gregory M. Boyle

Reid J. Schar
Gregory M. Boyle
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 923-2651

*Counsel for Cboe Exchange, Inc.,
Cboe Global Markets, Inc., and
Cboe Futures Exchange, LLC*

## **CERTIFICATE OF SERVICE**

I, Gregory M. Boyle, an attorney, certify that on July 2, 2019, I caused the foregoing to be served on all counsel of record listed in the above-captioned matter via the Court's ECF system.

    /s/ Gregory M. Boyle