# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION | No. 18 CV 4171 <br> MDL No. 2842 <br><br> Honorable Manish S. Shah |
| This Document Relates to All Cases | |

## APPLICATION TO APPOINT SHARAN NIRMUL AS CO-LEAD COUNSEL

Kessler Topaz appreciates the Court's appointment of Mr. Nirmul to Plaintiffs' Steering Committee ("PSC") in April and have faithfully remained committed to this litigation on behalf of our clients and the Class. At this juncture, however, the circumstances warrant appointment of Mr. Nirmul to a Co-Lead Counsel position. Respectfully, this appointment is in the best interests of the Class and reflects the reality of Kessler Topaz's leadership, institutional knowledge and contributions to this litigation.[1]

## I. KESSLER TOPAZ'S LEADERSHIP OF THIS LITIGATION TO DATE

Our Firm's institutional knowledge and leadership of this case to date are indisputable. *See* Fed. R. Civ. P. 23(g)(1)(A) (in appointing leadership, the Court must consider the work counsel has done to date). Quinn Emanuel has acknowledged this reality, including in its recent

---

[1] This Court acknowledged in appointing Mr. Jonathan Bunge (of Quinn Emanuel Urquhart & Sullivan, LLP) and Ms. Kimberly Justice (formerly of Kessler Topaz and now affiliated with Freed Kanner London & Millen, LLC) to one-year terms as co-lead counsel in this matter that changed circumstances may necessitate revisiting the leadership structure. *See* ECF No. 120 ("The point of a one-year term is to allow me to revisit the leadership structure and change it when the case develops to a more advanced posture."); ECF No. 241 (stating that all leadership appointments expire on August 1, 2019 and that the court "will consider restructuring the committee and appointing different lead counsel for terms to begin on August 1, 2019").

filing following Ms. Justice's departure from our firm. *See* ECF No. 240 at ¶¶ 2-3 ("The Kessler team has unique experience and expertise in the subject matters of this cases [sic] – securities and market manipulation claims. . . . We believe that it is in the best interest of the class for the current Kessler team to continue to work together on this matter."); *id.* at ¶ 3 ("There is a lot of background and expertise that the current Kessler team has acquired. . . ."); *id.* at ¶ 4 (recognizing Mr. Nirmul "has been actively involved in the case"); *id.* (suggesting Mr. Nirmul could be appointed "as a third co-lead"). So too did this Court when it provided an interim solution of immediately appointing Mr. Nirmul to the PSC on April 16, 2019.[2]

This is not surprising. Our lawyers have led and participated in **every** material aspect of this litigation. Current partners at the firm, including Mr. Nirmul, were the architects of the initial Doe Defendant-theory of liability and filed the first VIX-related class action, *Samuel v. Does*, in February 2018—a fact Ms. Justice highlighted and relied on in her initial application for leadership. *See* ECF No. 91 at 9-10. As the Court is aware, the initial Doe Defendant-theory of liability was copied in virtually every subsequently filed complaint.[3]

Since centralization and the Court's leadership appointments in August 2018, the Kessler Topaz team has: (i) worked to develop, draft and file the consolidated complaint; (ii) managed the Firm's in-house investigators—the only investigators assigned to this matter to date; (iii) defended

---

[2]  Specifically, the Court stated that Ms. Justice "will remain co-lead counsel for now" and "immediately appointed" Mr. Nirmul to the PSC to "allow for continuity of assignments and to allow the Kessler Topaz clients to have a role in directing the case." ECF No. 241.

[3]  Rather than repeat here, we respectfully refer the Court to our previous submission where we delineate Mr. Nirmul's and the Firm's: (i) experience in handling complex class actions and similar claims; and (ii) knowledge of the applicable law—two factors the Court must also consider. *See* ECF No. 228. Indeed, the Court has already considered and credited the Firm's experience and the knowledge it brings to bear in multifaceted class actions like this, which involve complex financial instruments and theories. Those credentials remain in place today.

Plaintiffs' claims against CBOE in motion to dismiss briefing[4]; (iv) worked closely with several industry and economic experts; and (v) prepared and worked through expedited discovery requests.

Ms. Justice and Mr. Bunge highlight and rely on these very same acts and contributions in support of their Joint Application for Re-Appointment. *See* ECF No. 265 at 2. But omitted from their filing is that each and every effort Ms. Justice and Mr. Bunge identify as having been made by "Co-Lead Counsel"—including those undertaken since April—in truth has involved the Kessler Topaz team.

We, together with Quinn Emanuel and Ms. Justice, developed and drafted the Amended Complaint (ECF No. 263), working extensively (on a daily basis) with retained market and economic experts to create, develop and refine analyses critical to Plaintiffs' claims. We participated in regular strategic discussions with Quinn Emanuel and Ms. Justice. We also served as the primary liaison between Plaintiffs' experts and counsel for named Plaintiffs (other than those represented by Quinn Emanuel or Ms. Justice). ***No other member of the PSC has been involved in these aspects of this case, worked with our experts, or participated in the daily management and litigation of this matter***.

In their brief, Ms. Justice and Mr. Bunge argue that the "value of developed institutional knowledge" is immeasurable. ECF No. 265 at 3. We agree. Kessler Topaz's commitment to this case, and the Firm's institutional knowledge of the law and facts underlying the Class's claims, is indisputable; and any suggestion that Kessler Topaz and other members of the PSC are similarly situated is, respectfully, demonstrably false.

---

[4]     Kessler Topaz's litigators, along with Quinn Emanuel and Ms. Justice (while she was a member of our Firm), successfully defended critical elements of Plaintiffs' claims against CBOE's motion to dismiss, including overcoming what would have been a dispositive immunity defense.

## II.    KESSLER TOPAZ'S COMMITMENT AND CONTRIBUTION OF RESOURCES TO THIS LITIGATION TO DATE

Kessler Topaz's unwavering commitment of resources to this litigation is also beyond dispute, and cannot be ignored in the Court's reconsideration of the leadership structure and whether the existing structure serves the best interests of the Class.

***Kessler Topaz has been retained by more named Plaintiffs than any other firm.*** Four of the twelve named Plaintiffs in the Amended Complaint are clients of Kessler Topaz.[5] This is more than any other law firm in this case, including Freed Kanner and Quinn Emanuel (who each represent one Plaintiff—Brian Barry and Spencer Bueno, respectively). Notably, none of Kessler Topaz's clients elected to be represented by Ms. Justice after her departure.[6] The Court has already acknowledged the importance of these Plaintiffs' ability to direct the litigation. *See* ECF No. 241. Collectively, Kessler Topaz's clients traded in all VIX products on which Plaintiffs' claims are based (VIX Options, VIX Futures, and VIX ETPs) and sustained considerable losses as a result of the alleged misconduct. Notably, following the Court's repositioning of leadership in April 2019, neither of the remaining co-lead counsel represents a Plaintiff with a CEA claim against either CBOE or the Doe Defendants.

***Kessler Topaz has expended hundreds of thousands of dollars for litigation expenses.*** Kessler Topaz's willingness to finance more than half of this litigation since the Court's initial leadership appointment in August 2018 cannot be ignored. Our Firm, along with Quinn Emanuel,

---

[5]    As the Court is aware, one of Kessler Topaz's clients, Mr. Samuel, "filed the first of these consolidated actions," which "is clearly the template for the great majority of the cases filed since and here consolidated." *In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (appointing counsel for plaintiff in first-filed action).

[6]    Ms. Justice subsequently entered her appearance on behalf of Mr. Barry, a plaintiff represented by Robins Kaplan, one of the supporting law firms listed in footnote 4 of Ms. Justice's and Mr. Bunge's application.

has funded the entire prosecution of this case (including since April) by covering all expenses to date, which have been considerable because of the extensive expert analysis necessary to develop the claims. No other firm has sought to make a financial contribution.

These contributions reflect our ongoing commitment to this case and ability to ensure the Class is provided with every resource necessary. *See In re Treasury Sec. Auction Antitrust Litig*., 2017 WL 10991411, at *2 (S.D.N.Y. Aug. 23, 2019) (appointing lead counsel with demonstrated financial and other essential resources where "action has required, and will continue to require, the investment of enormous resources"). Financial resources are (and will continue to be) critical to Plaintiffs' ability to prosecute their market manipulation claims here, which require extensive expert attention and analysis as reflected in the recently filed Amended Complaint.

***Kessler Topaz has devoted thousands of attorney hours to this case.*** Kessler Topaz has committed approximately ***3,500*** hours of attorney and professional staff time (excluding all of Ms. Justice's time spent while employed by Kessler Topaz) to advancing Plaintiffs' claims and legal theories, including more than 500 hours since April 2019. Similar to the expenses in this litigation, we fully expect this level of commitment to be sustained if not increased as this case unfolds.

***Kessler Topaz's leadership position furthers diversity and career development of associates***. Mr. Nirmul is the *only* lawyer of color working on the daily prosecution of this litigation. His appointment ensures that the case's leadership is a better reflection of the Class itself. Stacey Kaplan, a partner in Kessler Topaz's California office, has served in a lead role for our team since August 2018. Ms. Kaplan is the only woman actively litigating the case apart from Ms. Justice and brings to bear exceptional institutional knowledge of the facts and command of the applicable legal framework. Additionally, Joshua Materese, an associate with Kessler Topaz, continues to take a leadership role in all aspects of this case, especially in working closely with

our experts and liaising with other PSC members and law firms whose clients are also named Plaintiffs. He and Mr. Toby Futter from Quinn Emanuel have served as the two primary associates on this case since August 2018.

Courts regularly appoint co-lead counsel firms that "have already invested significant resources into the investigation and prosecution of this case" because those "firms have a strong incentive to persist in that effort." *In re 5-Hour Energy Mktg. v. Innovation Ventures, LLC*, 2013 WL 12134144, at *5 (C.D. Cal. Nov. 8, 2013). This logic applies with full force here.

**III.    THE STATUS QUO IS INEQUITABLE AND UNTENABLE**

Kessler Topaz has served in either a formal (through April 2019) or *de facto* (from April 2019 forward) leadership role for the entirety of this case, as the foregoing facts conclusively demonstrate. Both Quinn Emanuel and Ms. Justice have acknowledged in no uncertain terms Kessler Topaz's critical role in leading this case. *See* pp. 1-2, *supra* (quoting ECF No. 240 at ¶¶ 2-4); ECF No. 91 (Ms. Justice's initial leadership application in support of appointing Kessler Topaz, stating "[t]here is no credible argument that any firm or group of lawyers applying for leadership has done more than KTMC" and that "KTMC's long track record of success prosecuting complex class actions against financial institutions made it exceptionally well qualified to serve as lead counsel here"). Indeed, our lawyers "have steeped themselves in this extremely complex case for more than a year now." ECF No. 265.

Yet, despite that Kessler Topaz (i) represents four of the twelve named Plaintiffs and (ii) has operated as a partner in litigating and funding (exclusively with Quinn Emanuel) this case, the Firm has no authority over critical decisions regarding litigation strategy, case management, staffing, and even the allocation of litigation fund contributions.[7] Kessler Topaz has served as lead

---

[7]    This incongruity manifested itself most recently in Kessler Topaz being removed from the signature block of the Amended Complaint despite our firm's shared responsibility (with Quinn Emanuel and

counsel, co-lead counsel and as a member of steering committees in countless cases but we are not aware of any MDL (or class action in general) where, as here, a law firm that has shared equally in the work to date (as both Quinn Emanuel and Ms. Justice must concede), and is a primary funder of expenses, lacks any authority over or ability to direct the litigation.

Moreover, our clients selected Kessler Topaz to represent their interests based on the Firm's considerable resources and experience, and continue to want Kessler Topaz to have the ability to meaningfully control this litigation. We respect Ms. Justice's decision to seek new opportunities but the Court's appointment of Ms. Justice was based, in part, on our Firm's strength, size and experience. Since inception, we have deployed the full scope of these resources for the Class's benefit. It cannot be that the Court's appointment of Ms. Justice in an individual capacity was intended to be divorced entirely from the work our Firm did (and continues to do) and the resources we bring on the Class's behalf. Nor could the Court have intended that Ms. Justice's individual appointment would, following her departure from Kessler Topaz, result in a "status quo" that is plainly inequitable and places our Firm and our clients in an untenable and unprecedented position.

We note finally that Ms. Justice and Mr. Bunge tout the support from current PSC members and other counsel of the "status quo." ECF No. 265 at n.4. This was surprising (particularly the reference to other counsel in a footnote of their brief, who have had limited to no role in this litigation to date) and should be given little to no weight for the same reasons Quinn Emanuel

---

Ms. Justice) for all material aspects of the development of both the Amended Complaint and preceding Consolidated Complaint, and our representation of one-third of the named Plaintiffs.

derided in connection with its initial leadership papers.[8]  In addition, while other firms may support

the "status quo" for various reasons, no other firm before the Court faces a similar predicament as

Kessler Topaz.

For all of these reasons and those in Kessler Topaz's prior submissions with respect to

leadership in this litigation, we respectfully request that the Court appoint Mr. Nirmul as Co-Lead

Counsel.

Dated:  August 2, 2019                                    Respectfully submitted,

                                                          */s/ Sharan Nirmul*
                                                          **KESSLER TOPAZ MELTZER &
                                                          CHECK, LLP**
                                                          Sharan Nirmul
                                                          Joseph H. Meltzer
                                                          Stacey M. Kaplan*
                                                          Geoffrey C. Jarvis
                                                          Joshua A. Materese
                                                          snirmul@ktmc.com
                                                          jmeltzer@ktmc.com
                                                          skaplan@ktmc.com
                                                          gjarvis@ktmc.com
                                                          jmaterese@ktmc.com

                                                          280 King of Prussia Road
                                                          Radnor, PA 19087
                                                          Telephone: (610) 667-7706
                                                          Fax: (610) 667-7056

---

[8]     Specifically, Quinn Emanuel's brief stated:

>     Courts recognize that support from other firms for a "consensus proposal" is irrelevant
> because it is self-serving.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240
> F.R.D. 56, 58 (E.D.N.Y. 2006) ("[T]he number of attorneys supporting a given
> candidacy is not included among the factors set forth in Rule 23(g)").  And they
> recognize such support can be a red flag that behind doors quid-pro-quo deal-making
> has occurred, at the expense of the class. *See* Third Circuit Task Force, *Report on
> Selection of Class Counsel*, 74 Temp. L. Rev. 689, 697 (2001) ("[V]oluntary
> agreements among lawyers may create cartel-like groupings . . . In order to reach a
> 'deal,' lead counsel may have to 'cut in' so many lawyers that the representation of
> the class becomes inefficient and the ultimate fee request becomes inflated.").

ECF No. 102 at 2.

One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Fax: (415) 400-3001

*Attorneys for Plaintiffs Richard S. Aaron,
William Tad Berger, Dale Cary, and David
Samuel*

\* *Located in California*

## **CERTIFICATE OF SERVICE**

I, Sharan Nirmul, hereby certify that on August 2, 2019, I electronically filed the foregoing document using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of record.

*/s/ Sharan Nirmul*
Sharan Nirmul