# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: <br><br> CHICAGO BOARD OPTIONS EXCHANGE VOLATILITY INDEX MANIPULATION ANTITRUST LITIGATION <br><br> *This Document Relates to All Actions* | 18-cv-4171 <br> MDL No. 2842 <br><br> Honorable Manish S. Shah |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO THE RULE 26(f) CONFERENCE**

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE DISCOVERY STAY UNDER THE PSLRA NO LONGER APPLIES ............................................................................................................... 2

    II.    GOOD CAUSE EXISTS TO PERMIT THE REQUESTED DISCOVERY ......... 3

        A.    The Requested Discovery Is Necessary To Pursue Claims Against The Doe Defendants .................................................................................... 4

            1.    The purpose of the discovery is to identify the Doe Defendants .... 4

            2.    Plaintiffs' claims against the Doe Defendants are not futile ........... 5

        B.    The Requests Are Narrowly Tailored To Obtain The Information Necessary To Identify The Doe Defendants ............................................... 8

        C.    There Is No Undue Burden On Cboe To Comply With The Requests ........................................................................................................ 9

CONCLUSION .............................................................................................................................. 11

**PRELIMINARY STATEMENT**

Now that the motion to dismiss by certain defendants ("Cboe") has been resolved, Plaintiffs respectfully request the Court permit Plaintiffs to serve limited discovery on Cboe seeking to identify the "Doe" Defendants (the "Requests") (a copy of the proposed form of which is attached as Exhibit 1). .

Plaintiffs are not barred from serving such discovery by the PSLRA discovery stay, which was the primary basis on which the Court denied Plaintiffs' prior request for similar discovery. The PSLRA discovery stay applies only where there is a pending motion to dismiss. It does not apply where, as here, the Court has decided a motion to dismiss and another has not been filed. Thus, Plaintiffs must only show "good cause" for the requested discovery—a standard they easily meet: The discovery is necessary to identify the Doe Defendants and pursue claims against them.

Nor do the Court's rulings on Cboe's motion to dismiss render Plaintiffs' claims against the Doe Defendants futile. Plaintiffs' existing complaint plausibly demonstrates that unknown Doe Defendant traders manipulated the financial instruments at issue in this case. This is not a fishing expedition to support otherwise baseless claims, as the Court has already acknowledged. *See* Transcript of Proceedings, dated January 11, 2019 at 18 ("January Tr.") ("As robust as the complaint may be—and I don't think this is a case where what the plaintiffs are doing is something that I would call a fishing expedition[.]").

While the Court dismissed Plaintiffs' Securities Exchange Act and Commodity Exchange Act ("CEA") claims against Cboe for failure to sufficiently allege scienter and loss causation, none of those holdings indicate a Doe-identifying amendment would be futile. For instance, holding that Cboe *as the exchange* did not have sufficient knowledge of the Doe Defendants' manipulation says nothing about whether the Does knew of *their own manipulation*. Similarly,

1

holding that Cboe's failure to enforce its rules is too vaguely linked to Plaintiffs' damages says nothing of the direct link between the Doe manipulators and Plaintiffs' damages. Moreover, Plaintiffs already have presented evidence in prior submissions to the Court that show "directionality." The Court declined to allow a further amendment to incorporate such evidence into the operative pleading *as against Cboe* due to the two other (irrelevant here) shortcomings. And, of course, the Court has not yet addressed any claims under the Sherman Act, which Plaintiffs plead only against the Doe Defendants.

Finally, the Requests are particularized and narrowly tailored to seek only what Plaintiffs and their retained economic consultants believe is the minimal amount of information necessary to identify the Doe Defendants. At this juncture, Plaintiffs seek *only trading data*—no other form of evidence—for a specific window of time on VIX settlement days during the Class Period. For most of the Class Period, such settlements took place only once per month.

There is, thus, no undue burden on or prejudice to Cboe to comply with the Requests. Cboe has already acknowledged to this Court that much (if not all) of the data sought by Plaintiffs can be prepared and produced "in relatively short order." To date, Cboe has not articulated any burden associated with the timing or cost to collect and produce the requested data. And there is no prejudice to Cboe because the data sought will not be used against Cboe at the pleading stage.

Plaintiffs respectfully request that the Court grant their motion and order Cboe to respond within thirty days of service to the proposed Requests.

## ARGUMENT

### I. THE DISCOVERY STAY UNDER THE PSLRA NO LONGER APPLIES

The PSLRA provides: "In any private action arising under this chapter, all discovery and other proceedings shall be stayed *during the pendency of any motion to dismiss*, unless the court

2

finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).

In January 2019, the Court denied without prejudice Plaintiffs' request for expedited discovery "in light of the PSLRA stay" in effect at the time the request was made, which had been triggered by Cboe's motion to dismiss. January Tr. at 18-19; *id*. at 19 (finding "overlap with the merits and the statutory stay that is imposed by law suggests to me and leads me to conclude that the stay ought to be enforced"). Now, however, there is no stay to enforce because there is no pending motion to dismiss. The Court has adjudicated and dismissed all claims against Cboe with prejudice. *See* Dkt. 286.[1] The PSLRA discovery stay is thus inapplicable and not a barrier to the Court permitting the requested discovery.[2]

## II. GOOD CAUSE EXISTS TO PERMIT THE REQUESTED DISCOVERY

In the absence of an automatic stay, district courts have "broad discretion" to manage the "sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). They may authorize discovery prior to a Rule 26(f) conference for "good cause"—where the need for discovery "in consideration of the administration of justice outweighs the prejudice to the responding party." *Guava, LLC v. Does 1-5*, 2013 WL 3270663, at *2 (N.D. Ill. June 27, 2013).

---

[1] Where, as here, a motion to dismiss has already been decided, the automatic stay is lifted. *In re Finisar Corp. Sec. Litig.*, 2017 WL 1549485 at *8 (N.D. Cal. May 1, 2017) ("In light of this Order denying Defendants' Motion to Dismiss, the automatic stay imposed by the PSLRA is hereby lifted, and Plaintiff's Motion for Modification of the Stay is denied as moot."); *see In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281, 320-21 (S.D.N.Y. 2005) (same). The fact that only some claims are dismissed does not impact the lifting of the stay once the motion to dismiss is decided. *Id*. at 321. Even if the PSLRA discovery stay were in place, the requested discovery is appropriate under the exceptions expressly articulated in the PSLRA—the discovery is particularized and necessary to prevent undue prejudice, as shown herein.

[2] This remains the case even if the Court grants Plaintiffs' Rule 54(b) motion. There is no stay of discovery as to the remaining plaintiffs' claims where some plaintiffs' claims are dismissed in their entirety and partial final judgement is entered as to those claims. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 131 (S.D.N.Y. 2007) (no stay imposed on discovery during pendency of appeal following a 54(b) partial final judgement).

This standard requires evaluation of "the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Id.* (internal quotations and emphasis omitted). Relevant factors include "the purpose of requesting the expedited discovery," "the breadth of the discovery requests," and "the burden on the opposing party to comply with the requests." *Restoration Hardware, Inc. v. Haynes Furniture Co.*, 2017 WL 3597518, at *2 (N.D. Ill. Mar. 13, 2017).

### A. The Requested Discovery Is Necessary To Pursue Claims Against The Doe Defendants

#### 1. *The purpose of the discovery is to identify the Doe Defendants*

Absent the requested discovery, Plaintiffs cannot identify the Doe Defendants. Courts in this District and elsewhere routinely find good cause to allow expedited discovery where the purpose is to identify unknown defendants so that plaintiffs may pursue their claims. *See Dallas Buyers Club, LLC v. Does 1-28*, 2014 WL 3642163, at *2 (N.D. Ill. July 22, 2014); *Purzel Video GmbH v. Does 1-108*, 2013 WL 6797364, at *1 (N.D. Ill. Dec. 19, 2013); *reFX Audio Software, Inc. v. Does 1-111*, 2013 WL 3867656, at *1, 8 (N.D. Ill. July 23, 2013); *see also*, *e.g.*, *North Atl. Operating Co. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016); *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, 2016 WL 2894919, at *3 (S.D.N.Y. May 16, 2016); *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.73.216.214*, 109 F. Supp. 3d 165, 169 (D.D.C. 2015).

Indeed, as this Court is aware, earlier in this litigation, the Honorable Analisa Torres of the Southern District of New York granted current Plaintiff David Samuel's request for the expedited discovery of non-party Cboe in order to identify the Does in nearly identical circumstances. *See Samuel v. John Does*, No. 18-cv-01593 (S.D.N.Y.) (Mar. 13, 2018), Dkt. 6. This Court subsequently quashed that subpoena in response to Cboe's arguments that: (i) it was a

4

named defendant in several subsequently filed cases subject to the multidistrict litigation, and (ii) Doe discovery should be coordinated amongst all related actions to avoid duplicative or overlapping discovery requests on Cboe. *See Samuel v. John Does*, No. 18-cv-3190 (N.D. Ill.), Dkt. 26 at 20-21. Now that Cboe is no longer a defendant in this case, and the requested discovery sought here will be served on behalf of all cases in the multidistrict litigation, the concerns that motivated the initial stay no longer exist.

2. *Plaintiffs' claims against the Doe Defendants are not futile*

Plaintiffs should not be denied this imperative discovery on the grounds of futility. In its opinion, the Court dismissed with prejudice Plaintiffs' Securities Exchange Act claims against Cboe for failure to plead scienter and loss causation and Plaintiffs' CEA claims for failure to plead actual damages and loss causation. The Court did not address the claims brought against the Doe Defendants, including claims alleged exclusively against the Doe Defendants under the Sherman Act. *See* Mem. Opinion and Order ("Opinion"), Dkt. 286 at 48 (dismissing all counts against Cboe only).

During the February 6, 2020, status conference, the Court asked counsel whether its ruling with regard to the claims against Cboe also meant that "the claims against the Doe defendants don't move forward either, at least for most claims." Transcript of Proceedings, dated February 6, 2020, at 5; *see id*. (querying whether the Court's resolution of certain issues as to Cboe "can affect the viability of some or maybe almost all the claims against the Doe defendants," apart from Plaintiffs' Sherman Act claim against the Doe Defendants). Respectfully, Plaintiffs do not believe that the Court's ruling with regard to the sufficiency of Plaintiffs' allegations *as against Cboe* are dispositive of (or even particularly relevant to) the futility of a future amendment identifying claims against *the Doe Defendants.*

5

On the issue of scienter, which is relevant only to Plaintiffs' claims against the Doe Defendants under the Securities Exchange Act, the Court found that it was not adequately alleged that Cboe knew of or intended for the manipulation to take place. *See* Opinion at 27-28 (holding Plaintiffs did not sufficiently allege Cboe's scienter with respect to Cboe's design of the VIX or the Doe Defendants' alleged manipulation). But it is a plainly different question (and answer) whether an amended complaint establishes a sufficient basis for the Court to conclude that a Doe Defendant—the actual trader alleged to have engaged in manipulative trading—knew that it was manipulating.

On loss causation and damages for both the Securities and Exchange Act and CEA claims, the operative question is whether Plaintiffs have adequately alleged that the Does' manipulative trading was a proximate cause of Plaintiffs' alleged loss. This question, too, is different than the one raised and answered by Cboe's motion to dismiss—whether Plaintiffs had adequately alleged that Cboe's failure to enforce its rules proximately caused Plaintiffs' alleged loss. *See id.* at 34-46. The Court itself highlighted this distinction: "So too here, if plaintiffs suffered damages, it was the Doe Defendants' manipulation of the market that caused their harm. If the Does had not manipulated the market, plaintiffs would not have lost money. It was not anything that Cboe 'did or did not do' in its rule enforcement." *Id.* at 45 (internal citations omitted).

It is true that the Court reached beyond Cboe to address the question of whether Plaintiffs had sufficiently alleged harm from the underlying alleged manipulation. In answering this question, the Court found that the complaint needed greater specificity in alleging the direction in which *the Does' manipulation* moved the market on the days Plaintiffs transacted.

Plaintiffs had sought to further explain the complaint's existing allegations concerning directionality by submitting an Appendix with their Opposition to the Motion to Dismiss. *See* Dkt. 281 at Appendix – Additional Details of Transactions Identified in AC as Being Adversely Impacted. But the Court declined to consider Plaintiffs' Appendix, *see* Opinion at 41-42, finding it fell outside the four corners of the existing pleading. At the same time, the Court acknowledged that the Appendix includes facts concerning directionality that the Court perceived to be missing from the operative complaint. *See id*. at 41 ("Here, plaintiffs' appendix provides details about plaintiffs' trades that are absent from the complaint[.]"). Plaintiffs can and will plead those facts in an amended pleading against the Doe Defendants.

Additionally, Plaintiffs' experts have analyzed directionality for all alleged manipulated settlement days, not just those dates on which any Plaintiff held through settlement. With this information, Plaintiffs can plead additional facts, explaining how each Plaintiff was harmed, the type of damages each suffered, and whether the market was artificially high or low when Plaintiffs entered or exited positions. These and related facts will put the Doe Defendants on notice of the direction of manipulation and how each Plaintiff was harmed. *See id.* at 38.

In this Circuit and others, "leave to amend should be freely given and only denied after a motion to dismiss where it *appears to a certainty* that the plaintiff cannot state a claim upon which relief can be granted." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 690 (7th Cir. 2004) (reversing district court's denial of leave to amend) (internal quotations and citation omitted, emphasis added). As the above discussion makes clear, there are ample grounds to believe that Plaintiffs possess enough facts to state a viable claim against the Doe Defendants once they are identified. It therefore would be manifestly unjust not to afford Plaintiffs the opportunity to plead these facts against the Doe Defendants in an amended

pleading. Accordingly, discovery aimed at identifying the Doe Defendants is not futile and should be permitted.

### B. The Requests Are Narrowly Tailored To Obtain The Information Necessary To Identify The Doe Defendants

Each of Plaintiffs' six proposed Requests is particularized and seeks discrete and specific evidence that Plaintiffs and their economic consultants believe is required to identify the Doe Defendants. *See* January Tr. at 18 (the Court, commenting on nearly identical discovery requests, stated: "I think the requests are, in a sense, particularized—they've really identified what they're looking for[.]"). Where discovery is served for the purposes of identifying otherwise unknown defendants, courts routinely order the receiving party to comply. *See Purzel Video GmbH*, 2013 WL 6797364, at *8 ("Under Seventh Circuit case law, the court cannot consider only [the moving party's] burden. It must weigh the relevant interests and hardships of both parties. Here, given that [the subpoenaing party] simply cannot proceed with its claims against alleged infringers without information identifying subscribers, the balance tilts in favor of granting the motion to compel [ ] compliance with the subpoena."); Section II.A, *supra* (collecting cases). The same relief is appropriate here.

Plaintiffs' Requests are limited to transactional data—they do not seek any proprietary documentary evidence (e-mails, memos, etc.), which would require burdensome identification and privilege review. The Requests also are limited in time and scope, seeking only trading data from VIX settlement days during the Class Period.

Requests 1 and 2 seek data showing the SPX Options trades and quotes that were used to determine the VIX settlement price. This information will allow Plaintiffs to identify the traders who submitted trades or quotes during the settlement process whose trading patterns appear anomalous and intended to manipulate the VIX, rather than for legitimate business purposes.

8

Request 3 seeks data showing the SPX Options trades and quotes that *could* have been used to determine the VIX settlement price but were not, which will enable Plaintiffs with the ability to differentiate between trades that might appear manipulative, but actually were not. This data will show instances where a few additional trades might have permitted significant additional manipulation and because such trades were not made, will suggest that otherwise seemingly manipulative conduct was not—in fact—intended to manipulate the VIX closing price. Requests 4 and 5 seek data showing trades and quotes during just the first hour of open market trading, which enables Plaintiffs to compare these to trades and quotes during the settlement process, and thereby to identify any trading or quoting during the settlement process that is anomalous compared to market trading in the following hour. Finally, Request 6 seeks limited data within a specific window of time at the close of market the day before a settlement day showing the open VIX Options and VIX Futures positions of any traders who participated in the settlement process. Knowing who stood to benefit from a given settlement process—because they had open positions in expiring VIX Options and VIX Futures—will help reduce false positives by identifying those traders who had no apparent motive to engage in manipulation.

In short, the data Plaintiffs seek is the bare minimum necessary to identify the Doe Defendant manipulators.

        **C.**        <u>**There Is No Undue Burden On Cboe To Comply With The Requests**</u>

At no point during this litigation has Cboe demonstrated any burden in producing the information that is the subject of the Requests, much less the requisite *undue* burden. Cboe has not produced any evidence (or made any argument) regarding the actual cost, volume, or time associated with collecting and producing the requested electronic transaction data. *See Landis v. Warner Chilcott (US), LLC*, 2010 WL 5373664, at *3 (N.D. Ill. Dec. 15, 2010) (recognizing that "[b]ecause documents now are easily scanned, stored, and electronically transmitted, moving

9

them no longer creates the onerous burden it may once have imposed"); *In re Nejame Law*, 2016 WL 3125055, at *4 (N.D. Ill. June 3, 2016) (denying motion to quash subpoena seeking materials "directly relevant to the needs of this case" where moving party "failed to articulate how the subpoenaed materials impose an undue burden").

This is not surprising. During the January 2019 hearing on Plaintiffs' prior motion for expedited discovery, Cboe conceded that "[t]here is some data which would be, more or less, a data flip or dump." January Tr. at 10. Later, the Court specifically asked Cboe:

> *So I am curious to know whether, if we get to the point where I am ordering discovery, can it be produced quickly?* A lot of time has passed for CBOE to know that this issue is out there, and I have commented on it a few times. So if we get to the point where I say it's time, and if I've not given them the discovery today, but it happens down the road then I would want to make sure that we're talking about getting it in their hands pretty quickly. So am I wrong about that? Right about that? *I have said it a few times, so you see that I think that there is going to be a day when this happens, and I want to make sure you're ready for it*.

*Id*. at 13-14. Cboe responded:

> Right. And Your Honor has said it, and we have heard it, and we have done work to lay some groundwork for a potential production. I think, of course, there is some—there is, of course, substantial additional work which would have to be done based on the nature of what might ultimately be ordered or allowed in discovery. *So it is not—it is nothing that would be immediate but is something that we are preparing to do in relatively short order because we are mindful of what Your Honor said*.

*Id.* at 14.

In allowing the requested discovery, the Court will not be prejudicing Cboe. Plaintiffs will not use discovery received from Cboe in response to Plaintiffs' subpoena to plead or re-plead any claim against Cboe.[3] Thus, Cboe cannot claim as they previously have that "Plaintiffs

---

[3] To the extent Plaintiffs seek appeal relating to the dismissal of claims against Cboe, the Seventh Circuit will either affirm in full or in part, ending the case against CBOE, or find the *existing allegations in the complaint* are sufficient, remanding the case for further proceedings. In any of these outcomes, discovery cannot be used against Cboe.

10

seek to pursue merits discovery, presumably to remedy the substantive defects in their complaint." Dkt. 183 at 1. That argument is moot.

In any event, Plaintiffs' need for this discovery far outweighs any burden or prejudice Cboe can claim. Without it, Plaintiffs simply cannot pursue their claims against the Doe Defendants because they never will be in a position to identify them. Allowing Plaintiffs to seek limited discovery to identify the unknown manipulators is thus necessary to prevent "undue prejudice" from the potential loss of claims due to the passage of time, including because of the five-year statute of repose applicable to Plaintiffs' securities claims.[4] Plaintiffs do not believe that any such limitation-based arguments ultimately would prove to be successful, but there is no credible argument that further delaying Plaintiff's ability to identify the Doe Defendants through his targeted discovery of Cboe—for any amount of time—is not prejudicial.

Finally, as for the form and manner in which the data will be produced to Plaintiffs, Cboe previously has asserted a vague and unsubstantiated concern relating to the purported confidentiality of the data Plaintiffs seek with respect to the identity of the traders or their trading strategies. This concern is not new or novel, and can easily be alleviated by a binding protective order, as is common in nearly any litigation involving electronic discovery and/or trading data, that strictly limits who can access and use the data being received.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and order Cboe to respond within thirty days of service to the proposed Requests.

---

[4] The securities claims are subject to a two-year statute of limitations and a five-year statute of repose, *see* 28 U.S.C. § 1658(b). The commodities claims are subject to a two-year statute of limitations, *see* 7 U.S.C. § 25(c).

Dated: February 20, 2020                                        Respectfully submitted,

By: */s/ Jonathan C. Bunge*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Jonathan C. Bunge (Il. Bar #6202603)
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Fax: (312) 705-7401
jonathanbunge@quinnemanuel.com

Daniel L. Brockett
Crystal Nix-Hines
Toby E. Futter
Christopher M. Seck
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
crystalnixhines@quinnemanuel.com
tobyfutter@quinnemanuel.com
christopherseck@quinnemanuel.com

Jeremy D. Andersen
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Co-Lead Counsel*

*/s/ Kimberly A. Justice*
**FREED KANNER LONDON & MILLEN, LLC**
Kimberly A. Justice
923 Fayette Street
Conshohocken, Pennsylvania 19428
T: (610) 234-6771
F: (224) 632-4521
kjustice@fklmlaw.com

Michael J. Freed (Il. Bar #0869120)
Douglas A. Millen (Il. Bar #6226978)
Michael Moskovitz (Il. Bar #6237728)
Brian M. Hogan (Il. Bar #6286419)
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel.: (224) 632-4500
Fax: (224) 632-4521
mfreed@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
bhogan@fklmlaw.com

*Co-Lead Counsel*

*/s/ Hilary K. Scherrer*
**HAUSFELD LLP**
Hilary K. Scherrer
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Fax: (202) 540-7201
hscherrer@hausfeld.com

*/s/ Sharan Nirmul*
**KESSLER TOPAZ MELTZER & CHECK, LLP**
Sharan Nirmul
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Fax: (610) 667-7056
snirmul@ktmc.com

| | |
|---|---|
| */s/ David C. Frederick* <br> **KELLOGG HANSEN TODD FIGEL & FREDERICK, PLLC** <br> David C. Frederick <br> 1615 M Street, NW, Suite 400  Washington, DC 20036 <br> Telephone: (202) 326-7951 <br> Fax: (202) 326-7999 <br> dfrederick@kellogghansen.com | */s/ Michelle C. Clerkin* <br> **MOTLEY RICE LLC** <br> Michelle C. Clerkin <br> 777 Third Ave., 27th Floor <br> New York, NY 10017 <br> Telephone: (212) 577-0046 <br> Fax: (212) 577-0054 <br> mclerkin@motleyrice.com |

*Plaintiffs' Steering Committee Members*

13

## CERTIFICATE OF SERVICE

I, Jonathan C. Bunge, hereby certify that on February 20, 2020, I electronically filed the foregoing document using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of Record.

*/s/ Jonathan C. Bunge*
Jonathan C. Bunge